HERTZ CORPORATION, Plaintiff-Appellant and Cross-Appellee, v. RODNEY GARROTT *et al.*, Defendants (Joseph Ferraro *et al.*, Defendants-Appellees and Cross-Appellants).

First District (5th Division)   No. 1—91—3068

Opinion filed October 30, 1992.

Wildman, Harrold, Allen & Dixon, of Chicago (Kevin T. Martin, Ruth E. VanDemark, and Anthony G. Hopp, of counsel), for appellant.

Walwyn M. Trezise, of Chicago, and Lindquist & Vennum, of Minneapolis, Minnesota (Charles R. Weaver, Jr., of counsel), for appellees.

JUSTICE MURRAY delivered the opinion of the court:

This is the second time that the above-named parties have come before this court. The issues raised in the present appeal were briefed and presented in a previous appeal. (*Hertz Corp. v. Garrott* (1990), 207 Ill. App. 3d 644, 566 N.E.2d 337.) However, the merits of the issues raised were never reached in that appeal because we found that the trial court's rulings had been premature. Consequently, we reversed the order appealed from and remanded the cause for further proceedings.

We further indicated in our opinion in the previous appeal that, upon the completion of proceedings in the lower court and submission of a supplementary record, this court would consider the merits of the issues raised based upon the briefs already submitted. Since our opinion in the first appeal was issued, the trial court has conducted further hearings and a supplementary record has been filed. Therefore, we now address the issues raised in the previously filed briefs, which have been resubmitted in the present appeal.

Once again, we are asked by both plaintiff, the Hertz Corporation (Hertz), and defendants, Joseph Ferraro (Ferraro) and Anita Whitehead (Whitehead), to consider the correctness of a judgment rendered by the circuit court of Cook County in a declaratory action filed by Hertz on November 18, 1988. (Ill. Rev. Stat. 1987, ch. 110, par. 2—701.) The facts of the case are not in dispute.

On October 4, 1986, Angelique Garrott rented an automobile from Hertz at one of its locations in Chicago, Illinois. At approximately 3 a.m. on October 5, 1986, Angelique's husband, Rodney Garrott, was involved in an automobile accident near 2606 North Halsted in Chicago while he was driving the rental vehicle. Rodney Garrott collided with a vehicle owned by Yellow Cab Company (Yellow Cab) and driven by Folarin Gboyega (Gboyega). Ferraro and Whitehead were passengers in the cab at the time of the accident. Two unoccupied parked vehicles, one owned by Sharon Lampkin and one owned by Luigi Serra, were also struck.

As a result of the accident, several actions were filed. Ferraro and Whitehead filed a personal injury action (No. 87—L—25105) against the Garrotts, Gboyega, and Yellow Cab, in which Yellow Cab filed a third-party action against the Garrotts and Hertz; Gboyega filed a personal injury action (No. 88—L—3265) against Rodney Garrott and Hertz; and Yellow Cab (No. 87—L—24643) and Sharon Lampkin (No. 87—M1—116208) filed property damage claims against the Garrotts and Hertz. These actions were later consolidated in the lower court.

In the meantime, Hertz filed a declaratory action, asking the trial court to find that Angelique Garrott breached the rental contract. The rental contract provided that the rental vehicle was to be operated only by the customer and certain authorized persons who were validly licensed and had obtained the customer's prior permission. The customer's immediate family members who were licensed drivers over the age of 25 were included among the authorized operators. On the back of the rental agreement, in small print, it further stated that if the customer permitted the use of the vehicle by an unauthorized operator or used or permitted the use of the vehicle in a prohibited manner, the collision damage waiver (CDW), all liability protection and other insurance coverage would be voided and the customer "may" then be responsible for all losses and damages to or connected with the vehicle.

Hertz alleged that Angelique permitted Rodney Garrott, who was unlicensed and under the age of 25, to operate the rental vehicle. Furthermore, Hertz alleged that Rodney Garrott engaged in a prohibited use of the vehicle, namely, operating the vehicle while under the influence of alcohol. Hertz asked the court to find that as a result of these breaches of the rental contract (1) Hertz was not contractually obligated to defend any claims brought against Angelique and Rodney

Garrott arising from the October 5, 1986, automobile accident[1], (2) that the provisions of the rental agreement which would have obligated Hertz to provide indemnity for personal injury in the amount of $100,000 per person, $300,000 per accident and $25,000 in property damages, were voided, and (3) that Hertz, operating pursuant to a certificate of self-insurance under Illinois law (Ill. Rev. Stat. 1987, ch. 95½, par. 9—102), was obligated by statute to indemnify Rodney and Angelique Garrott for any and all claims arising from the October 5, 1986, accident, only to the extent of $50,000 *in the aggregate* pursuant to the provisions of sections 9—103 and 9—105 of the Illinois Vehicle Code (Ill. Rev. Stat. 1987, ch. 95½, pars. 9—103, 9—105).

The Garrotts, Sharon Lampkin and Luigi Serra did not file an appearance or response to Hertz's declaratory action. Therefore, Hertz moved for and obtained a default judgment against them.

At the trial on the declaratory action, in order to avoid the "permissive user" defense, all parties stipulated that Angelique Garrott permitted her husband, Rodney Garrott, to use the vehicle she had rented from Hertz. Hertz then presented evidence to show that Rodney Garrott had been under 25 years of age when he operated the rental vehicle and that he had been unlicensed to drive in the State of Illinois because his license had been suspended since 1985. Hertz also presented a witness who testified that at the time Rodney Garrott drove the rental vehicle and became involved in the accident on October 5, 1986, Garrott had been intoxicated.

The trial court issued an order on February 13, 1990, making certain findings of fact and law. The trial court found, as fact, that (1) at the time of the accident Rodney Garrott had his wife's permission to use the rental vehicle, (2) that Rodney Garrott did not have a valid driver's license, and (3) that Rodney Garrott had been operating the rental vehicle while intoxicated.

The trial court concluded, as a matter of law, that the rental contract between Angelique Garrott and Hertz had been breached, that Hertz was under no contractual obligation pursuant to the rental agreement to provide Angelique or Rodney Garrott with a defense or indemnity to third parties for personal injury or property damage arising from the accident, but that Hertz had a statutory obligation to

---

[1]Although Hertz sought a declaration that it was not obligated to defend the Garrotts, it is undisputed that Hertz did assume the defense of Rodney and Angelique Garrott in all underlying negligence actions arising out of the October 5, 1986, accident and that attorneys retained by Hertz for the Garrotts continue to defend the Garrotts in the underlying actions.

indemnify third parties up to the sum of $50,000 for *each person* claiming personal injury or property damage as a result of the October 5, 1986, accident. After motions to reconsider were denied both sides appealed.[2]

Now on appeal, defendants Ferraro and Whitehead argue that the trial court erred when it held that Hertz's contractual obligation to provide liability coverage was voided by the intoxication of the driver. Admitting that Illinois courts have not yet considered whether exclusionary clauses based upon the intoxication of the driver may be enforced in car rental agreements, they argue that the court's finding is contrary to analogous Illinois law as well as public policy. They contend that the ruling offends public policy concerns because it punishes the innocent victims of drunk drivers, and not the drunk drivers, by nullifying coverage which would compensate the victims, who are third-party beneficiaries to the insurance contract. Ferraro and Whitehead also direct this court's attention to opinions from other jurisdictions which have invalidated such exclusionary clauses as against public policy.

Consequently, defendants urge this court to rule that the amount of indemnification available to the injured parties should remain that which would have been provided under the rental agreement, despite the prohibited use of the rental vehicle. In the alternative, they ask this court to affirm the trial court's interpretation of Hertz's statutory obligation.

Hertz, on the other hand, argues that the trial court correctly enforced the exclusionary clause within the rental contract, thereby nullifying liability coverage upon the showing of a prohibited use of the rental vehicle, *i.e.*, the intoxication of the driver. Hertz contends that public policy does not demand that it provide complete compensation for injuries to the public, but only that amount of compensation designated sufficient pursuant to the financial responsibility statute with which it must comply. Hertz argues that by providing the basic level of indemnity for the benefit of the public required by the financial responsibility laws, it has fulfilled any obligation under the notion of public policy and, therefore, the exclusionary clause within its rental contract need not be found invalid as against public policy.

Hertz then goes on to argue, in its separate appeal, that the plain language of section 9—103 of the Illinois Vehicle Code (Ill. Rev. Stat.

---

[2]As stated earlier, the consolidated appeals of plaintiff Hertz and defendants Ferraro and Whitehead were submitted to this court previously, but not considered on their merits. It is those appeals which are presently being considered in this appeal.

1985, ch. 95½, par. 9—103), its legislative history, as well as common sense and public policy, require reversal of the trial court's declaratory judgment with respect to the interpretation of section 9—103 of the Illinois Vehicle Code. Hertz points out that the trial court's interpretation of the statute requires Hertz to indemnify injured parties of this accident in the amount of $50,000 per person sustaining bodily injury or property damage, which is a greater amount than would be required if the contract was in force, *i.e.*, $100,000 per person, $300,000 per occurrence and $25,000 for property damage.

Gboyega, who has filed only a reply brief with this court, argues merely that the trial court's interpretation of section 9—103 should be affirmed.

OPINION

We first address the issue of whether the trial court erred by giving effect to the exculpatory clause contained within Hertz's rental agreement which voided the liability protection and insurance provisions based upon the prohibited use of the rental vehicle, *i.e.*, Garrott's driving while intoxicated. Whether rental companies may condition liability protection upon the customer's adherence to all the provisions contained within the rental agreement, including a prohibition against driving while intoxicated, is an issue of first impression in the State of Illinois. However, after reviewing the case law from this and other jurisdictions cited by defendants, Ferraro and Whitehead, we conclude that the trial court erred when it determined that Hertz could employ the exculpatory clause contained within its rental agreement to avoid its obligation to provide liability protection at the level indicated within the rental agreement. We find that the exclusionary clause is void as against public policy and that the liability provision contained within the rental agreement must be given full force and consideration.

As stated earlier, on the front of Hertz's rental agreement signed by Angelique Garrott, it indicated that the rental vehicle was only to be operated by the customer and certain other authorized operators. The front of the form also contained a section dealing with liability coverage and insurance. This section clearly provided the customer with several different options. In this case Angelique Garrott accepted, for additional consideration, collision damage waiver (CDW) for the full value of the vehicle. She declined, however, personal accident insurance (PAI), personal effects coverage (PEC), and liability insurance supplement (LIS). Just above Garrott's initials for declining LIS, however, the agreement

indicated that liability protection (which was included in the cost of leasing the vehicle) had been increased to $100,000 per person and $300,000 per accident for bodily injury and to $25,000 for property damage. This was an increase from the amounts of $25,000/$50,000 for bodily injury and $10,000 for property damage which were listed on the back of the form.

   ■■ Nowhere on the front of the form did it state what the ramifications would be for failing to comply with the various restrictions. Nor did it indicate on the front of the form that liability protection would be withdrawn if the vehicle was operated in any one of a number of prohibited ways.[3] That information was only contained on the reverse side of the form, in "paragraphs 4 and 5," written in small print.

   As stated earlier, there are no cases in this State which have dealt with the circumstance presented in this case. However, *Standard Mutual Insurance Co. v. General Casualty Cos.* (1988), 171 Ill. App. 3d 758, 761, 525 N.E.2d 965, is an Illinois case wherein the insurer of the car rental company contended that its obligation to provide liability insurance became null and void when an authorized user of the rental vehicle violated the rental agreement by driving the vehicle outside the State (in Canada) without the written permission of the rental agency. The court found that "the conditions precedent to coverage in the rental agreement drastically reduce the amount of coverage provided to the renter under the Policy [the auto insurance policy issued by General Casualty to the rental agency]. This not only contravenes public policy, it also directly contradicts [the renter's] reasonable expectations that when he paid [the rental agency] for liability coverage, he would be relieved from liability in the event of collision." 171 Ill. App. 3d at 761.

   The same conclusion was reached in *Fidelity General Insurance Co. v. Nelson Steel & Wire Co.* (1971), 132 Ill. App. 2d 635, 270 N.E.2d 616. In *Fidelity* the insurer brought an action for reimbursement against the renter of a rental vehicle. The rental agreement pro-

---

[3]The prohibited uses of the rental vehicle listed in paragraph 5 on the reverse side of the rental agreement were as follows:

   "(a) to carry persons or property for hire, (b) to propel or tow any vehicle trailer or other object, (c) in any race or contest, (d) for any illegal purpose, (e) to instruct an unlicensed person in the operation of Vehicle, (f) if Vehicle is obtained from lessor by fraud or misrepresentation, (g) to carry persons other than in passenger compartment of Vehicle, (h) loading Vehicle beyond its rated capacity, or (i) while under the influence of alcohol or other intoxicants like drugs or narcotics."

vided that the renter would indemnify the insurance company for any and all losses resulting from the operation of the vehicle in violation of the terms and conditions of the agreement. The court held that the reimbursement provision within the rental agreement was against public policy and unenforceable because the conditions under which the renter became liable for reimbursement were so broad that the agreement virtually made the renter self-insured in almost every claim situation.

Although these cases are not directly on point, since they do not deal with the rental agency's attempted exculpation based upon the intoxication of the driver, they lend support for the notion that car rental agencies may not evade their responsibility to provide liability protection by inserting into their rental agreements a number of broad and sweeping conditions which nullify such protection. (See also *Tom Sawyer Country Day School v. Providence Washington Insurance Co.* (1985), 108 A.D.2d 810, 485 N.Y.S.2d 126.) In fact, Hertz conceded at oral argument that a total disclaimer of liability protection is not possible because of the agency's statutory obligation. Nonetheless, Hertz would have us uphold a provision in its rental contract which disclaims *all* liability protection based upon the prohibited use of the vehicle and then have us substitute Hertz's statutory obligation for the contractual obligation. We cannot agree.

First of all, we do not find the situation here to be significantly different than the situations presented in *Standard Mutual* and *Fidelity*, merely because the present case deals with an exclusion based upon the use of intoxicants. There have been a number of cases in other jurisdictions where the courts have considered the issue and ruled that such exculpatory clauses are void as against public policy. These cases include *Bass v. Horizon Assurance Co.* (Del. 1989), 562 A.2d 1194, *Donegal Mutual Insurance Co. v. Long* (Pa. Super. 1989), 564 A.2d 937, *Allstate Insurance Co. v. Sullivan* (Mo. App. 1982), 643 S.W.2d 21, and *Universal Indemnity Insurance Co. v. Tenery* (Colo. 1934), 39 P. 2d 776.

As stated in *Bass*, a situation very close to the one at bar:

"[T]he fixing of penalties for antisocial conduct is, in the first instance, a governmental responsibility through legislative response. The Delaware General Assembly has expressly determined the consequences which result from a conviction of driving under the influence. These sanctions include the criminal penalties of fine and/or imprisonment, 21 *Del. C.* §4177(d) and license revocation through administrative action, 21 *Del. C.* §4177A. We do not believe that the General Assembly, in addi-

tion to the imposition of these substantial penalties, also intended, by implication, to work a forfeiture of insurance protection purchased in conformity with State law." *Bass*, 562 A.2d at 1197.

So, too, in this case, we believe that Hertz, a private entity, does not have the ability to separately impose sanctions upon private citizens for driving while intoxicated, in the name of the public policy, when such sanctions work a hardship upon the general public and, at the same time, benefit the rental agency and/or its insurer.

■ In addition, we find no merit to Hertz's contention that upon a finding that the exculpatory clause is void, its obligation to indemnify third parties is limited to the amounts required by statute for the agency to demonstrate its financial responsibility. Chapter 9 of the Vehicle Code provides that owners of for-rent vehicles, in order to operate their business in the State of Illinois, must demonstrate financial responsibility by (1) posting bond, (2) obtaining insurance, or (3) obtaining a certificate of self-insurance. (Ill. Rev. Stat. 1985, ch. 95½, par. 9—101 *et seq.*) At the time of the accident, if a bond was posted, the amount of the required bond was $50,000, if a policy of insurance was obtained, the amount of liability insurance coverage necessary was $50,000. Nevertheless, we find that the statute merely prescribes the minimum amounts needed by a rental agency to conduct business in the State. The statute in no way defines the scope of the obligation that may be assumed by the rental agency by separate agreement. If Hertz wanted to provide liability protection at a level that would merely satisfy the minimum requirement under the statute, it was free to have done so in the contract. It did not choose to do so, however.

Furthermore, finding that the exculpatory clause was invalid does not invalidate the entire contract, only the offending clause. In fact, if we were to substitute the financial responsibility limits for the invalid provision we would be bifurcating the contract and reforming it, adding the alternate amounts of coverage. We believe that invalidating the exculpatory provision as against public policy requires only that we strike the offending provision. The contract, which set the contractual obligation for liability protection, remains in force.

Having decided to reverse the trial court's decision on the validity of the exculpatory provision, we need not rule on the the trial court's interpretation and construction of Hertz's statutory obligation to indemnify third-party claimants.

240

The judgment of the trial court is reversed. We find that the provision within the rental contract which voided liability protection based upon the prohibited use of the rental vehicle, namely, driving while under the influence of an intoxicant, is found to be invalid as against public policy. We find that Hertz's duty to indemnify the Garrotts for liability incurred is defined by the rental contract.

Reversed.

McNULTY, P.J., and GORDON, J., concur.