# Illinois Official Reports

## Supreme Court

---

### *Nelson v. Artley*, 2015 IL 118058

---

| | |
|---|---|
| Caption in Supreme Court: | DeSHAW NELSON, Appellee, v. DONALD ARTLEY (Enterprise Leasing Company of Chicago, Appellant). |
| Docket No. | 118058 |
| Filed | October 8, 2015 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Alexander P. White, Judge, presiding. |
| Judgment | Appellate court judgment reversed.<br>Circuit court judgment affirmed. |
| Counsel on Appeal | Hugh C. Griffin, of Hall Prangle & Schoonveld, LLC, and Esther Joy Schwartz, of Stellato & Schwartz, Ltd., both of Chicago, and Bettina J. Strauss and Timothy J. Hasken, of Bryan Cave LLP, of St. Louis, Missouri, for appellant.<br><br>Lisa K. Lange, of Chicago, for appellee.<br><br>Richard P. Schweitzer, of Washington, D.C., and William D. Brejcha, of Scopelitis, Garvin, Light, Hanson & Feary, P.C., of Chicago, for *amicus curiae* Truck Renting and Leasing Association, Inc.<br><br>Leslie J. Rosen, of Chicago, for *amicus curiae* Illinois Trial Lawyers Association. |

JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Chief Justice Garman and Justices Freeman, Thomas, Kilbride, Burke, and Theis concurred in the judgment and opinion.

**OPINION**

¶ 1     At issue in this case is the extent of a rental car company's financial responsibility for a default judgment entered against a driver of one of its vehicles where, as here, the company chose to comply with our state's financial responsibility laws by obtaining a certificate of self-insurance from the Secretary of State. Adhering to a decision by the appellate court in *Fellhauer v. Alhorn*, 361 Ill. App. 3d 792 (2005), the circuit court concluded that the rental car company's liability was limited to the same minimum coverage provisions applicable to rental car companies electing to meeting their financial responsibility obligations through the purchase of an insurance policy. On review of the circuit court's judgment, the appellate court in this case rejected *Fellhauer*, undertook its own statutory analysis and held that the rental car company was liable for the full amount of the default judgment. 2014 IL App (1st) 121681. We granted the rental car company's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Jan. 1, 2015). We also allowed the Illinois Trial Lawyers Association and the Truck Renting and Leasing Association to file friend of the court briefs. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010). For the reasons that follow, we now reverse the appellate court's judgment and affirm the judgment of the circuit court.

¶ 2                              BACKGROUND

¶ 3     Suzanne Haney rented a car from Enterprise Leasing Company of Chicago (Enterprise). While being driven by an individual named Donald Artley, the vehicle crossed the center line of the roadway and collided with an oncoming car operated by DeShaw Nelson. Nelson subsequently sued Artley in the circuit court of Cook County to recover damages for the injuries he sustained in the accident. Artley was uninsured. When he failed to file an answer or otherwise appear after having been served with the complaint and summons, Nelson sought and obtained an order of default against him. See 735 ILCS 5/2-1301 (West 2010). Following a prove-up hearing, the circuit court found that Nelson had sustained $600,000 in damages and entered judgment in that amount in his favor and against Artley.

¶ 4     After obtaining the default judgment, Nelson brought a supplementary action against Enterprise pursuant to section 2-1402 of the Code of Civil Procedure (735 ILCS 5/2-1402 (West 2010)) and Illinois Supreme Court Rule 277 (eff. Jan. 4, 2013) to determine whether the company held any property from which the judgment could be satisfied. In response to a citation to discover assets issued by the circuit court, Enterprise denied that it was in possession of any property of Artley, the judgment debtor. It also raised three affirmative defenses to the citation or to any efforts to obtain recovery from it in connection with Nelson's judgment against Artley.

¶ 5     First, Enterprise asserted that Artley was not its customer, was not listed on its rental agreement with Haney as an authorized user of the vehicle, and did not even have Haney's permission to use the vehicle. To the contrary, Haney had reported the vehicle as stolen. Accordingly, Enterprise argued, it had "no obligation to extend any financial protection to

[Artley] under [the] Motor Vehicle Code or Illinois public policy or Illinois case law construing same in any amount."

¶ 6    For its second affirmative defense, Enterprise contended in the alternative that it was self-insured as permitted by Illinois law and that under the appellate court's decision in *Fellhauer v. Alhorn*, 361 Ill. App. 3d 792 (2005), its total financial responsibility for the liability of any authorized driver was $100,000 per occurrence, the same minimum required of rental car companies which elect to meet their statutory financial responsibility obligations through the purchase of insurance policies. Enterprise asserted that it had already paid $50,000 to settle another claim arising from the same accident brought by an individual named Antoine Ousley, and had tendered an additional $50,000 to the court to allocate between Nelson and a third injured party named Renardo Page. Because those sums exhausted the $100,000 per occurrence liability limits claimed by the company, Enterprise contended that it had already tendered all that it could be required to pay.

¶ 7    Enterprise's third and final affirmative defense pertained solely to the separate but related issue of liability for court costs and postjudgment interest. Enterprise argued that there was nothing in its rental agreement with Haney nor in the applicable Illinois statutes that would obligate Enterprise to pay costs or postjudgment interest in connection with the default judgment. Accordingly, Enterprise contended, there was no foundation to support recovery of either of those items.

¶ 8    Enterprise attached various documents to its written response to the citation. These included the certificate of self-insurance it had obtained from the Illinois Department of Insurance and a copy of its rental agreement with Haney. Paragraph 7 of the rental agreement, entitled "Responsibility to Third Parties," specified that Enterprise would comply with applicable motor vehicle financial responsibility laws as a self-insured entity and would not extend any responsibility to the renter, additional authorized drivers, passengers, or third parties except to the minimum amount set forth in the relevant financial responsibility laws.

¶ 9    After Nelson moved unsuccessfully to strike Enterprise's affirmative defenses, he filed a petition against the company for a turnover order seeking $600,000, the entire amount of his default judgment against Artley, plus interest and costs. Although the circuit court granted relief to Nelson, it ruled that it was obligated to follow the appellate court's decision in *Fellhauer* and that under *Fellhauer*, Enterprise's liability under Illinois's financial responsibility laws was limited to the same minimum coverage levels required of rental car companies which elect to purchase insurance policies, $50,000 per person, $100,000 per occurrence. As previously noted, Enterprise had already paid $50,000 to settle a claim by Ousley arising out of the accident and tendered an additional $50,000 to be allocated between Nelson and Page. Because the court had previously allotted $25,000 to Page, its final order limited the turnover amount to Nelson to $25,000, the balance left under the $100,000 per occurrence limit.

¶ 10   Nelson appealed, arguing that *Fellhauer* was wrongly decided and should not be followed. The appellate court agreed with Nelson's position. It rejected *Fellhauer*'s construction of the governing financial responsibility laws and concluded that where, as here, a rental car company elects to meet Illinois's mandatory liability insurance requirements by obtaining a certificate of self-insurance, its financial responsibility is not limited to the same minimum amounts required when mandatory liability insurance requirements are met

through the purchase of an insurance policy. Rather, the company is obligated to pay the full amount of judgments entered against the drivers of its vehicles. Accordingly, the appellate court reversed the judgment of the circuit court and remanded to that court with directions to enter a turnover order in favor of Nelson in an amount sufficient to cover the entire $600,000 default judgment entered against Artley. 2014 IL App (1st) 121681, ¶ 37.

¶ 11 Enterprise petitioned this court for leave to appeal. Ill. S. Ct. R. 315 (eff. July 1, 2013). We granted that petition in order to resolve the conflict between *Fellhauer* and the appellate court's decision in this case regarding the extent of a rental car company's liability where, as here, the company elected to meet its statutory financial responsibility obligations by self-insuring. For the reasons that follow, we conclude that the appellate court in this case erred when it rejected the construction of the law adopted in *Fellhauer*. The judgment of the appellate court is therefore reversed and the judgment of the circuit court, which adhered to *Fellhauer*, is affirmed.

¶ 12                                    ANALYSIS

¶ 13 In undertaking our review, we begin by noting that the sole basis for Enterprise's financial liability in this case is the obligation imposed on it pursuant to this state's financial responsibility laws by virtue of its ownership of the vehicle which collided with Nelson when it was being driven by Artley, who was uninsured. Enterprise itself committed no wrongdoing. While Enterprise initially contested its financial liability on the grounds that Artley had stolen the vehicle and was not an authorized driver, it has waived that defense. The company now concedes that under Illinois law, it must pay some portion of Nelson's default judgment against Artley. The only question before us is how much of the judgment it must pay. Resolution of that question turns solely on the terms of the relevant financial responsibility statutes, which are set forth in the Illinois Vehicle Code (625 ILCS 5/1-100 *et seq.* (West 2010)). Statutory construction presents a question of law. Our review is therefore *de novo*. *McVey v. M.L.K. Enterprises, LLC*, 2015 IL 118143, ¶ 11.

¶ 14 Section 7-601(a) of the Illinois Safety and Family Financial Responsibility Law (625 ILCS 5/7-601(a) (West 2010)) mandates liability insurance coverage for automobiles and other motor vehicles designed to be used on a public highway. Under the statute, no person is permitted to operate, register or maintain registration of such a motor vehicle unless the vehicle is covered by a liability insurance policy. *Progressive Universal Insurance Co. of Illinois v. Liberty Mutual Fire Insurance Co.*, 215 Ill. 2d 121, 128 (2005). The purpose of this insurance requirement is to protect the public by securing payment of their damages. *Id.* at 129. The law does not, however, require that the full amount of any loss be covered. Rather, it mandates only certain minimum levels of coverage. At the time of the events giving rise to this litigation, liability insurance policies were required to provide coverage of not less than $20,000 for the death or bodily injury of any one person, $40,000 for the death of bodily injury of two or more persons, and $15,000 for property damage occurring in any one motor vehicle accident. See 625 ILCS 5/7-203, 7-601(a) (West 2010); *State Farm Mutual Automobile Insurance Co. v. Illinois Farmers Insurance Co.*, 226 Ill. 2d 395, 402 (2007).

¶ 15 Special financial responsibility provisions have also been enacted for persons who operate motor vehicles to transport passengers for hire (see 625 ILCS 5/8-101 (West 2010)); persons who operate medical transport vehicles (see 625 ILCS 5/8-101.1 (West 2010)); and

owners of for-rent vehicles such as Enterprise (see 625 ILCS 5/9-101 (West 2010)). All are required to provide "proof of financial responsibility" to the Secretary of State of Illinois. 625 ILCS 5/8-101, 8-101.1, 9-101 (West 2010). The purpose of this requirement is to provide members of the public with some modicum of protection against negligent drivers of these various types of vehicles. *Fellhauer v. Alhorn*, 361 Ill. App. 3d 792, 797 (2005). As with the minimum liability insurance required by the Illinois Safety and Family Financial Responsibility Law, it was not intended to provide full coverage for losses. It simply insures that injured persons have some coverage when otherwise there would be none. See *Fogel v. Enterprise Leasing Co. of Chicago*, 353 Ill. App. 3d 165, 176 (2004); *Insurance Car Rentals, Inc. v. State Farm Mutual Automobile Insurance Co.*, 152 Ill. App. 3d 225, 232 (1987).

¶ 16    During the period relevant to this case, the general definition section of the Vehicle Code defined "[p]roof of financial responsibility" as "[p]roof of ability to respond in damages for any liability thereafter incurred resulting from the ownership, maintenance, use or operation of a motor vehicle for bodily injury to or death of any person in the amount of $20,000, and subject to this limit for any one person injured or killed, in the amount of $40,000 for bodily injury to or death of 2 or more persons in any one accident, and for damage to property in the amount of $15,000 resulting from any one accident." 625 ILCS 5/1-164.5 (West 2010). The minimum coverage specified under the foregoing definition was thus the same as the minimum coverage required under section 7-601(a) of the Illinois Safety and Family Financial Responsibility Law (625 ILCS 5/7-601(a) (West 2010)). Higher limits, however, were imposed by the General Assembly with respect to persons who operate motor vehicles to transport passengers for hire, persons who operate medical transport vehicles, and owners of for-rent vehicles such as Enterprise. See 625 ILCS 5/8-103, 8-104, 8-109, 9-103, 9-105 (West 2010). The specified categories of owners and operators were subject to these higher limits rather than the limits set forth in section 1-164.5's general definition of "[p]roof of financial responsibility" by virtue of section 1-101 of the Vehicle Code (625 ILCS 5/1-101 (West 2010)), which stated that the general definitions of words and phrases contained in the Code do not apply "when the context otherwise requires and except where another definition set forth in another Chapter of this Code and applicable to that Chapter or a designated part thereof is applicable."[1]

¶ 17    Under the Vehicle Code, car rental companies such as Enterprise have the option of satisfying the proof of financial responsibility requirement in any one of three alternate ways. They may file with the Secretary of State (1) a motor vehicle liability bond as provided in section 9-103 of the Vehicle Code (625 ILCS 5/9-103 (West 2010)); (2) an insurance policy or other proof of insurance in a form prescribed by the Secretary as provided in section 9-105 of the Code (625 ILCS 5/9-105 (West 2010)); or (3) a certificate of self-insurance issued by the Director of the Illinois Department of Insurance. 625 ILCS 5/9-102 (West 2010).

¶ 18    If the insurance policy option is selected, the policy must insure the operator of the rented vehicle against liability "to a minimum amount of $50,000 because of bodily injury to, or death of any one person or damage to property and $100,000 because of bodily injury to or death of 2 or more persons in any one motor vehicle accident." 625 ILCS 5/9-105 (West

---

[1]We further note that vehicles subject to these heightened requirements have been expressly exempted from the normal liability insurance policy requirements set forth in section 7-601 of the Vehicle Code. See 625 ILCS 5/7-601(b) (West 2010).

2010). Similarly, if the rental car company elects to file a motor vehicle bond as proof of financial responsibility, the bond must cover judgments against the customer and owner of the vehicle and specified others for damage to property other than the rented vehicle, or for any injury to, or for the death of any person, including an occupant of the vehicle resulting from the vehicle's operation and must be "in the penal sum of $100,000," the same minimum upper limit as an insurance policy. 625 ILCS 5/9-103 (West 2010). When the insurance policy and bond options are chosen, the person seeking to engage in the business of renting out a motor vehicle must apply for and receive approval of the policy or bond from the Secretary of State. 625 ILCS 5/9-108 (West 2010).

¶ 19    In the case before us today, Enterprise elected the third option for proving its financial responsibility. Rather than purchase an insurance policy or motor vehicle liability bond, it obtained a certificate of self-insurance from the Director of the Illinois Department of Insurance. In order to obtain that certificate, Enterprise was required to satisfy the Illinois Department of Insurance that it was able and will continue to be able to pay a judgment obtained against it as provided by section 7-502 of the Vehicle Code (625 ILCS 5/7-502 (West 2010)). 92 Ill. Adm. Code 1090.10 (1973); see *Huff v. Enterprise Rent-A-Car Co., Midwest*, 307 Ill. App. 3d 773, 778 (1999). The judgment in this case was, of course, against the vehicle's driver and not Enterprise itself. As we have previously noted, however, Enterprise no longer disputes that Nelson may seek redress against it to collect on the default judgment Nelson obtained against the driver of Enterprise's rental vehicle. In this, Enterprise's position is consistent with the position it has taken in prior litigation, and we assume, without deciding, that this position is correct. See *Huff v. Enterprise Rent-A-Car Co., Midwest*, 307 Ill. App. 3d 773. In the case before us today, Enterprise questions only how much of the default judgment it is obligated to pay.

¶ 20    The provisions of the Vehicle Code authorizing rental car companies to prove their financial responsibility by obtaining certificates of self-insurance do not specify the magnitude of the companies' liability exposure under the certificates. In *Fellhauer v. Alhorn*, 361 Ill. App. 3d 792, 799 (2005), however, our appellate court concluded that with respect to the companies' liability to injured third parties, the legislature intended no distinction between self-insurers and those companies that elected to meet their proof of financial responsibility obligations through the other methods permitted under the law. More precisely, the appellate court interpreted the law to mean that self-insuring rental car companies are subject to the same limits on liability that would apply if they elected, instead, to meet their proof of financial responsibility obligations through the purchase of insurance policies pursuant to section 9-105 of the Vehicle Code (625 ILCS 5/9-105 (West 2010)). The court reached this conclusion based on the relevant statutory provisions governing proof of financial responsibility, the purposes of those provisions, and persuasive authority from other jurisdictions applying comparable law in similar circumstances. *Fellhauer*, 361 Ill. App. 3d at 797-99.

¶ 21    The appellate court in the case before us acknowledged the existence of *Fellhauer*, but accorded it no deference. 2014 IL App (1st) 121681, ¶¶ 22-25. Rejecting the rationale advanced by the *Fellhauer* court as well as the authorities from other jurisdictions on which *Fellhauer* relied, it undertook its own, independent interpretation of the applicable Illinois statutes. Emphasizing the absence of express language limiting liability where proof of financial responsibility is established through a certificate of self-insurance and purporting to

take into account the statutory scheme as a whole, it concluded that the liability faced by self-insuring rental car companies was, in effect, unlimited. *Id.* ¶¶ 26-27.

¶ 22    Enterprise challenges the appellate court's analysis on several grounds. It contends that the court's decision places Illinois law in direct conflict with the so-called Graves Amendment to the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users (SAFETEA-LU) (49 U.S.C. § 30106 (2006)) federal legislation which generally preempts all state statutory and common law to the extent such law would hold owners in the business of renting or leasing motor vehicles vicariously liable for the negligence of drivers, except when there is negligence or criminal wrongdoing on the part of the owner (see Beth Bates Holliday, *Validity, Construction, and Application of Graves Amendment (49 U.S.C.A. § 30106) Governing Rented or Leased Motor Vehicle Safety and Responsibility*, 29 A.L.R. Fed. 2d 223 (2008)). Enterprise further argues that the appellate court wrongly disregarded the terms of the rental car contract between Enterprise and Haney, which limited Enterprise's financial responsibility for judgments against renters or other drivers of its vehicles to the "applicable state minimum financial responsibility amounts." Enterprise's primary argument, however, is that the appellate court's judgment is premised on an interpretation of the governing provisions of Illinois law which contravenes basic rules of statutory construction.

¶ 23    We believe that Enterprise's challenge to the appellate court's construction of the relevant statutes is meritorious and that the *Fellhauer* court's interpretation of the law was correct. As a preliminary matter, *Fellhauer* has been in place for a decade. Until the appellate court in this case ruled as it did, no court had challenged the soundness of *Fellhauer*'s determination that rental car companies electing to meet their proof of financial responsibility obligations under section 9-101 by self-insuring under section 9-102(3) were subject to the same minimum coverage provisions applicable to rental car companies electing to meeting their financial responsibility obligations through the purchase of insurance policies under section 9-102(2). *Fellhauer* stood unquestioned, and the legislature allowed the relevant provisions of the Vehicle Code to remain in effect, as written, without change throughout this period. Where, as here, the legislature chooses not to amend a statute after a judicial construction, it will be presumed that the legislature acquiesced in the court's statement of legislative intent. *Zimmerman v. Village of Skokie*, 183 Ill. 2d 30, 50 (1998).

¶ 24    We do not rely on this presumption alone. The appellate court's construction of the relevant statutory provisions must be rejected for other reasons as well. When interpreting a statute, courts must " 'consider the statute in its entirety, keeping in mind the subject it addresses and the apparent intent of the legislature in enacting it.' [Citation.]" *People v. Allen*, 2015 IL 113135, ¶ 32. Although the appellate court in this case acknowledged the need to consider the relevant provisions of the Vehicle Code as a whole (2014 IL App (1st) 121681, ¶ 24), it ultimately failed to recognize that the express, undisputed and overriding purpose of the self-insurance option, as with the two alternate options available to rental car companies under section 9-102 of the Vehicle Code (625 ILCS 5/9-102 (West 2010)), is simply to establish "proof of financial responsibility." As we discussed earlier in this opinion, "proof of financial responsibility," as that term is defined and used in the Vehicle Code, is not proof of ability to fully satisfy judgments. Rather, it is merely proof of ability to provide some base level of financial coverage where otherwise there would be none. That

base-level coverage is therefore the standard by which the self-insurers' liability must be gauged.

¶ 25    Imposing unlimited liability on those who elect to self-insure under section 9-102(3) (625 ILCS 5/9-102(3) (West 2010)) is patently incompatible with this standard. It is the same as saying that anyone who chooses to meet the minimum financial responsibility requirements through self-insurance will be subject to maximum financial exposure. That is a deal no rational economic actor would be likely to take. Under the appellate court's interpretation of the law, the self-insurance option would therefore be rendered meaningless. This is impermissible. Construing a statute in a way that renders part of it a nullity offends basic principles of statutory interpretation. See *Madison Two Associates v. Pappas*, 227 Ill. 2d 474, 493 (2008).

¶ 26    The appellate court's interpretation would also have random and inconsistent consequences for the motoring public. Under the result reached by the appellate court, the ability of persons injured in accidents involving rental cars to recover from the cars' owners would become a lottery. If a rental company met its proof of financial responsibility obligations through purchase of an insurance policy or bond, it could cap its liability at a maximum of $100,000. If it turned out that the company had elected to self-insure, however, the company's liability exposure would be unlimited. Two otherwise identical injured parties could thus face substantially different recovery prospects based solely on the fortuity of which option the rental car company had chosen to satisfy our state's proof of financial responsibility requirements. This could be a boon for a person injured in an accident which happened to involve a self-insured rental car. For all other injured parties, however, the inequity is manifest.

¶ 27    In construing a statute, we presume that the legislature did not intend absurd, inconvenient, or unjust results (*Alvarez v. Pappas*, 229 Ill. 2d 217, 232 (2008)), and we will not, absent the clearest reasons, interpret a law in a way that would yield such results (*Town of Cicero v. Green*, 211 Ill. 241, 244 (1904)). We see no clear reason why the legislature would have wanted to subject self-insuring car rental companies to greater liability than all other car rental companies. Indeed, we fail to see *any* reason why the legislature would have wanted to single such companies out for special treatment. For purposes of insuring compliance with this state's proof of financial responsibility standards, the distinction would accomplish nothing for anyone. We therefore reject it, as did the appellate court in *Fellhauer*.

¶ 28    In the course of its analysis, the court in *Fellhauer* observed that its conclusion, *i.e.*, that the legislature did not intend to treat self-insurers differently than their counterparts who elected to be covered by traditional insurance policies and expose them to unlimited liability, was dictated by common sense. *Fellhauer*, 361 Ill. App. 3d at 798. The appellate court panel in this case disparaged *Fellhauer*'s reliance on common sense, suggesting that it was not an appropriate consideration or, at least, not sufficient authority to support the court's conclusions regarding the meaning and operation of the relevant statutes. 2014 IL App (1st) 121681, ¶¶ 22, 24. These comments echoed criticism by the dissenting justice in *Fellhauer*, who complained that the "court should not rewrite statutes with its own 'common sense.' " *Fellhauer*, 361 Ill. App. 3d at 801 (Myerscough, J., dissenting).

¶ 29    With due respect to the appellate court panel in this case and the dissenting justice in *Fellhauer*, we do not believe this criticism is valid. For one thing, there is nothing inherently

objectionable about using common sense when deciphering a statute. To the contrary, our court has specifically cited with approval the proposition that courts "do not set aside common experience and common sense when construing statutes." (Internal quotation marks omitted.) *Exelon Corp. v. Department of Revenue*, 234 Ill. 2d 266, 282 (2009). Moreover and more importantly, when the majority in *Fellhauer* referred to common sense, at no time did it suggest that its subjective beliefs were in any way a substitute for legal reasoning and authority. Rather, it used "common sense" as a shorthand for deductive reasoning based on the language and purposes of the law and the consequences of a contrary construction. It then proceeded to reference case law from other jurisdictions to further support its position, there being none directly on point from Illinois. *Fellhauer*, 361 Ill. App. 3d at 798-99. The conclusion it reached was properly followed by the circuit court in this case. It should have been followed by the appellate court as well. In light of this holding, we need not reach Enterprise's additional arguments that the decision by the appellate court in this case is incompatible with the Grave's Amendment and wrongly disregarded the terms of the rental car contract between Enterprise and Haney.

¶ 30                                    CONCLUSION

¶ 31      For the foregoing reasons, the circuit court was correct when it construed the relevant provisions of the Vehicle Code to mean that Enterprise's financial responsibility was limited to the same minimum coverage provisions applicable to rental car companies electing to meet their financial responsibility obligations through the purchase of an insurance policy. Under that construction of the law, the amount Enterprise is obligated to pay Nelson under the turnover order is limited to $25,000, which it has already tendered. Contrary to the view taken by the appellate court, Enterprise is not liable for the entire $600,000 default judgment. The judgment of the appellate court is therefore reversed and the circuit court's judgment is affirmed.

¶ 32      Appellate court judgment reversed.
¶ 33      Circuit court judgment affirmed.