# Illinois Official Reports

## Appellate Court

---

> ### *Crowley v. Empire Fire & Marine Insurance Co.*, 2019 IL App (2d) 180752

---

| | |
|---|---|
| Appellate Court Caption | BARBARA CROWLEY, Individually and as Special Administrator of the Estate of Robert T. Crowley, Deceased, Plaintiff-Appellee, v. EMPIRE FIRE AND MARINE INSURANCE COMPANY; ENTERPRISE LEASING COMPANY OF CHICAGO, LLC; ENTERPRISE HOLDINGS, INC.; and THOMAS BRUEN, Defendants (Empire Fire and Marine Insurance Company, Defendant-Appellant). |
| District & No. | Second District<br>Docket No. 2-18-0752 |
| Filed | June 18, 2019 |
| Decision Under Review | Appeal from the Circuit Court of De Kalb County, No. 17-MR-305; the Hon. William P. Brady, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | Cremer, Spina, Shaughnessy, Jansen & Siegert, LLC, of Chicago (Brian A. O'Gallagher and Nicole M. Miller, of counsel), for appellant.<br><br>Peter C. Morse, of Morse Bolduc & Dinos, LLC, and Thomas Tuohy, of Tuohy Law Offices, both of Chicago, and Jack Slingerland, of Slingerland & Clark, P.C., of Sycamore, for appellee. |

| Panel | JUSTICE SCHOSTOK delivered the judgment of the court, with opinion. |
|---|---|
| | Presiding Justice Birkett and Justice Hutchinson concurred in the judgment and opinion. |

**OPINION**

¶ 1 This case concerns whether an exclusion in a *supplemental* insurance policy that Empire Fire and Marine Insurance Company (Empire) issued to John Bruen was unenforceable as a matter of public policy. The exclusion applied if the insured was under the influence of alcohol or drugs. The circuit court of De Kalb County determined that the intoxication exclusion was unenforceable and therefore entered summary judgment in favor of the plaintiff, Barbara Crowley. Empire appeals from the trial court's order. We reverse.

¶ 2 I. BACKGROUND

¶ 3 On June 12, 2015, John Bruen rented a 2015 Volkswagen Jetta from Enterprise. He purchased "full coverage" insurance, which included "Supplemental Liability Protection" (SLP or excess policy). The insurance was provided by Empire. The insurance policy provided coverage through a surety bond in the amount of $100,000, with the potential for an additional $900,000 of excess liability coverage. The SLP policy included an exclusion that the insurance did not apply to a loss where the insured was under the influence of alcohol or drugs. The rental agreement listed Thomas Bruen as an additional authorized driver of the rental car.

¶ 4 On June 13, 2015, Thomas Bruen, while driving the rental car, was involved in a motor vehicle accident that killed Robert Crowley and injured his wife Barbara Crowley. Thomas Bruen had marijuana, cocaine, and opiates in his system at the time of the accident, and he was subsequently convicted of aggravated driving under the influence of drugs (625 ILCS 5/11-501(d)(1)(C), (F) (West 2014)).

¶ 5 On May 1, 2017, Barbara Crowley filed a personal-injury complaint against Thomas Bruen. She alleged that Thomas Bruen's negligent operation of the rental car caused the accident and the resulting injuries to her and her late husband.

¶ 6 On September 29, 2017, Barbara Crowley filed a complaint against Enterprise Leasing Company of Chicago, LLC, and Enterprise Holdings, Inc. (Enterprise defendants), as well as Empire, seeking a declaration that the Empire excess policy provided coverage for the claims that she had asserted against Thomas Bruen in the underlying case.

¶ 7 On January 16, 2018, Crowley filed a motion for a judgment on the pleadings against Empire. She argued that Empire was obligated to provide coverage based on its insurance contract with John Bruen. She asserted that the intoxication exclusion in the Empire policy was void because it was contrary to Illinois public policy.

¶ 8 On February 23, 2018, Empire filed a motion for summary judgment on Crowley's action. Empire argued that, based on the language of the insurance contract, Thomas Bruen was not entitled to coverage because he was intoxicated at the time of the accident. Empire insisted that the insurance contract was neither ambiguous nor against public policy.

¶ 9     On July 18, 2018, the trial court denied Empire's motion for summary judgment and indicated that it would treat Crowley's motion for judgment on the pleadings as a motion for summary judgment.

¶ 10    On August 15, 2018, the trial court granted Crowley's motion for summary judgment. Relying on *Hertz Corp. v. Garrott*, 238 Ill. App. 3d 231 (1992), the trial court found that the intoxication exclusion in Empire's SLP policy was unenforceable as against public policy and that the Empire policy provided an additional $900,000 of excess coverage. The trial court also granted Crowley's motion to nonsuit the Enterprise defendants and found that its order resolved all matters in controversy between the parties. Empire thereafter filed a timely notice of appeal.

¶ 11                                    II. ANALYSIS

¶ 12    The issue on appeal is whether the trial court erred in granting summary judgment to Crowley. Appellate review of a summary judgment ruling is *de novo*. *AUI Construction Group, LLC v. Vaessen*, 2016 IL App (2d) 160009, ¶ 16. Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2016). The interpretation of an insurance policy and the coverage provided are questions of law that are appropriate for resolution through summary judgment. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993). The policy should be enforced as written unless the policy provision in question is ambiguous or contravenes public policy. *Safeway Insurance Co. v. Hadary*, 2016 IL App (1st) 132554-B, ¶ 21; *Pahn v. State Farm Mutual Automobile Insurance Co.*, 291 Ill. App. 3d 343, 345 (1997).

¶ 13    Here, Crowley does not argue that the intoxication exclusion barring coverage to Thomas Bruen is ambiguous. Rather, she contends that the exclusion is unenforceable because it contravenes public policy. The Illinois General Assembly declared it to be the public policy of this state that owners and operators of motor vehicles carry primary liability insurance coverage when it passed the Illinois Safety and Family Financial Responsibility Law (Financial Responsibility Law) (625 ILCS 5/7-601(a) (West 2016)), requiring each motorist to have minimum liability insurance coverage regardless of fault. See *Nelson v. Artley*, 2015 IL 118058, ¶ 14. When a statute exists for the protection of the public, it cannot be overridden through private contractual terms. *Progressive Universal Insurance Co. of Illinois v. Liberty Mutual Fire Insurance Co.*, 215 Ill. 2d 121, 129 (2005). One reason for this rule is that "the members of the public to be protected are not and, of course, could not be made parties to any such contract." *American Country Insurance Co. v. Wilcoxon*, 127 Ill. 2d 230, 241 (1989). Where liability coverage is mandated by statute, a contractual provision in an insurance policy that conflicts with the statute will be deemed void. *Progressive*, 215 Ill. 2d at 129. When we assess whether a statutory provision prevails over a contractual provision, however, we must keep in mind that parties generally have freedom to contract as they desire. *Id.* Our supreme court has reasoned:

    "The freedom of parties to make their own agreements, on the one hand, and their obligation to honor statutory requirements, on the other, may sometimes conflict. These values, however, are not antithetical. Both serve the interests of the public. Just as public policy demands adherence to statutory requirements, it is in the public's

interest that persons not be unnecessarily restricted in their freedom to make their own contracts." *Id.*

¶ 14    Accordingly, courts use sparingly the power to declare a contractual provision void as against public policy. *Id.* A contractual provision will not be invalidated on public policy grounds unless it is clearly contrary to what the constitution, the statutes, or the decisions of the courts have declared to be the public policy or unless it is manifestly injurious to the public welfare. *Id.* at 129-30. Such a determination depends upon the particular facts and circumstances of each case. *Id.* at 130.

¶ 15    Both parties point to two cases in which the Illinois Appellate Court has analyzed the interplay between public policy and insurance contracts: *Garrott* and *Fogel v. Enterprise Leasing Co. of Chicago*, 353 Ill. App. 3d 165 (2004). Crowley argues that this case is analogous to *Garrott* while Empire argues that this case is analogous to *Fogel*.

¶ 16    In *Garrott*, Angelique Garrott rented an automobile from Hertz. *Garrott*, 238 Ill. App. 3d at 233. The rental agreement indicated that liability protection (which was included in the cost of renting the vehicle) was $100,000 per person, $300,000 per accident for bodily injury, and $25,000 for property damage. *Id.* at 237. Angelique declined to purchase any liability insurance supplement. *Id.* at 236. The day after Angelique rented the vehicle, her husband, Rodney, was involved in an automobile accident. *Id.* at 233. As a result of the accident, Hertz was sued. *Id.* Hertz filed a declaratory action, asking the trial court to find that it owed no liability coverage to Angelique because Rodney (1) was not authorized under the contract to drive the vehicle and (2) violated the contract by driving while intoxicated. *Id.* The trial court found that Hertz's contractual obligation to provide liability coverage was voided by Rodney's intoxication. *Id.* at 234.

¶ 17    The appellate court reversed, finding that the exclusionary clause in the insurance contract was void as against public policy. *Id.* at 240. In so holding, the appellate court quoted with approval a Delaware Supreme Court opinion that invalidated a similar intoxication exclusion:

> " '[T]he fixing of penalties for antisocial conduct is, in the first instance, a governmental responsibility through legislative response. The Delaware General Assembly has expressly determined the consequences which result from a conviction of driving under the influence. These sanctions include the criminal penalties of fine and/or imprisonment [citation] and license revocation through administrative action [citation]. We do not believe that the General Assembly, in addition to the imposition of these substantial penalties, also intended, by implication, to work a forfeiture of insurance protection purchased in conformity with State law.' " *Id.* at 238-39 (quoting *Bass v. Horizon Assurance Co.* 562 A.2d 1194, 1197 (Del. 1989)).

¶ 18    The *Garrott* court opined that, as in the Delaware case, a car rental company (a private entity) could not, in the name of public policy, impose a sanction upon private citizens for driving while intoxicated, "when such sanctions work a hardship upon the general public and, at the same time, benefit the rental agency and/or its insurer." *Id.* at 239. The appellate court additionally rejected Hertz's argument that the court should lower the amount of the insurance that Hertz was obligated to provide to the statutory minimum of $50,000. *Id.* The appellate court explained that it would not reform the contract because if Hertz "wanted to provide liability protection at a level that would merely satisfy the minimum requirement under the statute, it was free to have done so." *Id.*

¶ 19        Turning to the second case, in *Fogel*, the driver was in an accident while driving a vehicle rented from Enterprise. *Fogel*, 353 Ill. App. 3d at 168. The driver had purchased supplemental liability coverage. *Id.* The 18-year-old driver was able to rent a car because he misrepresented his age as 22. *Id.* Enterprise would not rent to anyone younger than 21. *Id.* After the accident, Enterprise sought to rescind its contract with the driver and deny him insurance. *Id.* at 169-70. The victims of the accident sued Enterprise, arguing that (1) Enterprise could not rescind its contract and (2) public policy required that the contract, including the supplemental liability policy, be enforced. *Id.* at 171-73. On review, the appellate court rejected those arguments. *Id.* at 175. In rejecting the public policy argument that Enterprise could not rescind the contract once the rights of an innocent third party had vested, the appellate court stated:

> "[W]e do not find Fogel's position persuasive. The cases cited by Fogel concern state laws for mandatory liability insurance. In these cases, courts have held that mandatory insurance statutes have abrogated the insurance company's right to rescind the policy with regard to claims of persons not involved in making the misrepresentation. In other words, the public policy underlying mandatory insurance statutes requires that insurance companies cannot rescind the contract and preclude an innocent third party from coverage benefits. The rationale in these cases is that mandatory insurance statutes were enacted to protect the public from financial hardship and these laws have transformed what was a private contract into a quasi-public obligation. The public policy argument is that where a state mandates liability insurance in order to protect the public, the risk of a misrepresentation made by the applicant is borne by the insurer and not an innocent third party.
>
> In this case, however, Fogel's public policy argument fails because we are not addressing mandatory liability coverage. *** Here, the case involves a private contract entered into between Enterprise and [the driver]. The supplemental liability protection [(SLP)] was a part of that contract. The SLP was not required under state law with the purpose of protecting the public from financial hardship. Thus we find Fogel's public policy argument unavailing." (Emphasis omitted.) *Id.* at 174.

¶ 20        *Fogel* is more analogous to the instant case because the insurance policy at issue is an excess policy. We consider this to be an important distinction when considering public policy relating to insurance. As noted earlier, by passing the Financial Responsibility Law requiring each motorist to have minimum liability insurance coverage regardless of fault, the Illinois General Assembly declared it to be the public policy of this state that owners and operators of motor vehicles carry primary liability insurance coverage. See *Nelson*, 2015 IL 118058, ¶ 14. However, the Financial Responsibility Law does not mandate that excess or supplemental liability insurance coverage be obtained once the mandated minimum level of insurance has been met. *Id.* ("The law does not, however, require that the full amount of any loss be covered. Rather, it mandates only certain minimum levels of coverage."). Additionally, no Illinois statute precludes an intoxication exclusion in an excess or supplemental liability policy. See *Progressive*, 215 Ill. 2d at 138 ("[T]he *** Financial Responsibility Law clearly contemplates that exclusions may be included in policies and that those exclusions will be upheld."). As such, Empire's denial of excess or supplemental coverage to Thomas Bruen based on his violation of the insurance contract does not violate public policy.

¶ 21    In so ruling, we note that the distinction the *Fogel* court drew between mandatory insurance and supplemental insurance regarding public policy concerns is consistent with the way that other courts have analyzed the issue.[1] See *T.H.E. Insurance Co. v. Dollar Rent-A-Car Systems, Inc.*, 900 So. 2d 694, 696 (Fla. Dist. Ct. App. 2005) (public policy dictates against mandating excess liability insurance coverage when an exclusion for losses that stem from intoxication is clearly spelled out); *Philadelphia Indemnity Insurance Co. v. Carco Rentals, Inc.*, 923 F. Supp. 1143, 1153 (W.D. Ark. 1996) (intoxication exclusion in supplemental liability policy does not violate Arkansas public policy because the supplemental liability coverage is purely voluntary and is not designed to comply with minimum financial responsibility laws).

¶ 22    Crowley argues that *Fogel* is distinguishable because the underlying contract in that case was void, as it was fraudulently entered into. Because John Bruen entered into a valid contract with Empire, she insists that *Fogel* has no relevance here. We do not believe it to be significant whether a driver's insurance coverage is negated because of a misrepresentation in the rental contract (as in *Fogel*) or limited by operation of a policy exclusion (as in the case here). Rather, what is relevant is that *Fogel* involved an excess policy and *Garrott* did not.[2] The *Fogel* court drew this same distinction when it held that the public policy rationale in *Garrott* did not apply because that case did not concern insurance coverage that was not required by state law. *Fogel*, 353 Ill. App. 3d at 174.

¶ 23    We also reject Crowley's argument that, based on *Garrott*, we should find the intoxication exclusion void as against public policy because enforcing the exclusion would "work a hardship upon the general public and, at the same time, benefit the rental agency and/or its insurer." *Garrott*, 238 Ill. App. 3d at 239. We decline to extend *Garrott* to the facts of this case. Adopting Crowley's argument would essentially void any insurance exclusion if that exclusion has the effect of harming an innocent third party. Our supreme court has specifically rejected that argument, stating:

> "We observed [in *Progressive*] that the legislature could have barred [auto] insurers from excluding certain risks from coverage, but did not do so, and concluded that the legislature must have intended that coverage exclusions may be included in liability policies ***. [Citation.]
>
>   *** We recognize that, depending upon the circumstances of a particular case, *** any exclusion[ ] may result in no insurance coverage from which injured third parties may be compensated. Such coverage gaps, however, implicate policy concerns

---

[1]We recognize that it is well established that, where the public policy of Illinois may be found in this state's constitution, statutes, and judicial decisions, the public policies of other states are not persuasive. *State Farm Mutual Automobile Insurance Co. v. Collins*, 258 Ill. App. 3d 1, 4 (1994). Nothing, however, bars this court from adopting sound reasoning. We need not ignore persuasive reasoning in nonprecedential decisions any more than persuasive reasoning in a learned treatise or anywhere else. *People ex rel. Webb v. Wortham*, 2018 IL App (2d) 170445, ¶ 27.

[2]Crowley mischaracterizes the policy in *Garrott* as an excess policy because it provided greater coverage than was mandated by statute. An excess policy is different from a primary policy because it does not provide coverage until the coverage provided by the primary policy has been exhausted. See *United States Fidelity & Guaranty Co. v. Continental Casualty Co.*, 198 Ill. App. 3d 950, 955 (1990). The fact that a primary policy provides greater coverage than is mandated by statute does not convert a primary policy into an excess policy. See *id.*

that are properly considered by the legislature, not this court." *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424, 445 (2010).

¶ 24    Further, we are unpersuaded by Crowley's argument that Empire's excess insurance policy is illusory (and therefore unenforceable) because it excludes coverage for all accidents arising from criminal acts. Crowley insists that, if the exclusion is upheld, Empire would never have to provide coverage because all accidents are premised on criminal acts. Our supreme court has rejected a similar argument, asserting that a court "need not speculate as to the myriad of other factual scenarios to which the exclusion might apply." *Id.* at 440. Based on the specific facts of this case, Empire's intoxication exclusion in the excess policy is enforceable.

¶ 25    We also reject Crowley's argument that the intoxication exclusion should be unenforceable because it was in small print on the reverse side of the rental agreement and neither John nor Thomas Bruen was provided with a copy of the Empire policy. As Empire points out, Crowley forfeited this issue by not raising it before the trial court. *In re Estate of Chaney*, 2013 IL App (3d) 120565, ¶ 8 ("It is well-settled law in Illinois that issues, theories, or arguments not raised in the trial court are forfeited and may not be raised for the first time on appeal."). Even overlooking forfeiture, however, whether the exclusion was in small print is irrelevant to whether the exclusion violates public policy.

¶ 26    Finally, we find Crowley's reliance on *Maryland Casualty Co. v. Iowa National Mutual Insurance Co.*, 54 Ill. 2d 333 (1973), to be misplaced. Crowley argues that *Maryland Casualty* stands for the proposition that the owner of an automobile may not cause a permissive user to lose liability coverage by placing restrictions on the use of the vehicle. She therefore insists that no insurance exclusions applied to Thomas Bruen because "[o]nce the initial permission has been granted, no limitations may be placed upon the driver. Any deviations are immaterial. Any use is permissible."

¶ 27    In *Maryland Casualty*, at issue was whether the insurance company had to provide coverage for someone who had permission to drive the vehicle but had not received that permission from the named insured. *Id.* at 336. The *Maryland Casualty* court did not address whether the exclusions that applied to the named insured also applied to anyone whom the insured gave permission to drive the vehicle. However, the supreme court addressed that issue in *Progressive* and held that an exclusion that applied to the named insured also applied to anyone whom the insured permitted to drive the vehicle. *Progressive*, 215 Ill. 2d at 134. Thus, *Progressive* specifically refutes Crowley's argument.

¶ 28                                   III. CONCLUSION

¶ 29    For the reasons stated, the judgment of the circuit court of De Kalb County is reversed.

¶ 30    Reversed.