GEORGE W. OWINGS, Appellant, *vs.* CHARLES R. ESTES, Appellee.

*Opinion filed December 17, 1912.*

FIXTURES—*when show cases, racks and hangers are part of the building.* Wall show cases, racks and hangers purchased or made for and especially adapted to the use to which they were appropriated in the building and attached more or less securely to the building by the owner with the intention that they should become a part thereof, and which were used by him in his harness business for some ten years, will be regarded as part of the building and will pass to the purchaser of the building at a master's sale.

APPEAL from the Circuit Court of Scott county; the Hon. O. P. THOMPSON, Judge, presiding.

J. M. RIGGS, for appellant.

T. J. & J. O. PRIEST, for appellee.

Mr. JUSTICE HAND delivered the opinion of the court:

This was a bill in chancery filed by the appellant in the circuit court of Scott county to enjoin the appellee from removing from a building located upon certain real estate in Winchester, in said county, which the appellant had purchased at master's sale in a partition suit, certain show-cases, show-racks and other articles which were attached to the interior of said building and which had been used by the owner of said premises in connection with the manufacture and sale of harness for many years. An answer and replication were filed and a hearing was had before the court upon oral testimony and testimony taken before the master, and a decree was entered dismissing the bill for want of equity. The complainant has prosecuted this appeal.

The record shows that Jesse Estes, the father of appellee, had been engaged in the manufacture and sale of

harness in Winchester for more than forty years prior to his death, which occurred in the year 1909. His harness shop burned down in the year 1898, and the next year he re-built on the same location a two-story brick building 20x85 feet. The building fronted south upon the public square. The first floor, which was used as a harness shop, was divided into two rooms, the first room being 20x60 feet in size and the rear room 20x25 feet in size, the front room being used as a show and salesroom and the rear room as a workshop. At the time the new building was erected Jesse Estes purchased in the city of St. Louis three show-cases, which were delivered to him in Winchester, knocked down. One was fifty-five feet long, six feet wide and twelve feet high, had three glass doors, was paneled and had above the doors glass transoms, and was fitted up on the inside with hangers upon which to hang harness for show purposes, and was of sufficient size to permit customers to go on the inside and pass from door to door and out into the show and salesroom. The case was placed against the west side of the front room, the wall of which constituted its back, the floor its bottom and the ceiling its top. Its corner posts, which were made of four-inch stuff, extended from the floor to the ceiling and were nailed to the ceiling and floor with six or eight-penny nails. The other two cases were of similar construction to the large case, and were four feet wide, eight feet high and from fifteen to eighteen feet in length, and each weighed approximately 700 pounds. These cases stood in the front room, against the east wall, and were used as places in which to show saddles, fine harness and other articles kept in the store for sale. The cases were all surrounded at the bottom by a quarter-round molding, which held them snugly to the floor. Neither of the three cases could be removed from the room except by being taken apart. There were also two substantial racks, which were either spiked or bolted to the floor or walls, upon which to display blank-

ets, halters, etc. There were also two hangers made of iron, which were screwed into the ceiling joists. The cases, racks and hangers are conceded to be of the value of $250, and could not be removed from the building without marring, more or less, the room in which they were located. It was averred in the bill that the appellee was insolvent. The tools and fixtures in the shop were appraised at $25 and were located in the rear room of the building. The tools and fixtures appraised were sold by the administratrix of Jesse Estes to the appellee and his brother, and upon the death of the brother were sold to appellee by his administratrix. After the purchase of the premises by the appellant and the tools and fixtures by the appellee, the appellee commenced to tear down and remove the cases, racks and hangers from the building, and this bill was filed.

The sole question to be determined in this case is, are said cases, racks and hangers fixtures, and did the title thereto pass to the appellant, as real estate, at the master's sale? It is generally held that what is annexed to the land becomes a part of the land, but it is often said it is not always easy to determine what constitutes an annexation sufficient for such purpose. Mr. Justice Breese, in discussing that question in *Arnold* v. *Crowder,* 81 Ill. 56, on page 58 said: "Perhaps the true rule is that articles not otherwise attached to the land than by their own weight are not to be considered as part of the land unless the circumstances are such as to show that they were intended to be part of the land, the onus of showing they were so intended lying on those who assert that they have ceased to be chattels; and that, on the contrary, an article which is affixed to the land, even slightly, is to be considered as part of the land unless the circumstances are such as to show that the article was intended all along to continue a chattel, the onus similarly lying on those who contend that it is a chattel."

In *Kelly* v. *Austin,* 46 Ill. 156, it was held articles attached to the soil will be considered as a part of the real estate, as between an executor and heir or a vendor and vendee, when, as between landlord and tenant, they would be considered as personal property,—that is, that the rule as between executor and heir and vendor and vendee is much more strict than between landlord and tenant.

In *Fifield* v. *Farmers' Nat. Bank,* 148 Ill. 163, the following rules taken from Ewell on Fixtures for determining what are to be regarded as fixtures, and which would, as between a mortgagor and mortgagee and vendor and vendee, pass as a part of the real estate, were adopted (p. 169) : "First, real or constructive annexation of the thing in question to the realty; second, appropriation or adaptation to the use or purpose of that part of the realty with which it is connected; third, the intention of the party making the annexation to make it a permanent accession to the freehold, this intention being inferred from the nature of the article affixed, the relation and situation of the party making the annexation and the policy of the law in relation thereto, the structure and mode of the annexation, and the purpose or use for which the annexation has been made." And in that case the further quotation from the same author was made with approval, where it was said: "Of these tests the clear tendency of modern authority seems to be to give pre-eminence to the question of intention to make the article a permanent accession to the freehold, and the others seem to derive their chief value as evidence of such intention." In illustration of the rule the court in the same case quoted with approval the following excerpt from the opinion in *Pierce* v. *George,* 108 Mass. 78, where it was said: "Articles placed in a mill by the owner to carry out the obvious purpose for which it was erected, and adapted to that purpose, are generally part of the realty, notwithstanding the fact that they could be removed and used elsewhere."

In the case at bar all of the articles sought to be removed from the building were attached, more or less securely, to the building, and they were all purchased or made for the particular use to which they were appropriated in the building and were specially adapted to that use, and it is clear, we think, that it was the intention of Jesse Estes, at the time he attached the cases, racks and hangers to his building, that they should permanently become a part of the building. Each of said articles was specially adapted to the use to which it was appropriated in the building. The party making the annexation owned the building and used the articles in connection with the building for something like ten years, and when he attached each of said articles to his building he obviously attached them with the intention that they should become a permanent part of the building, and had he sold the premises without any reservation they would have passed to his grantee, and the same rule applied when the premises were sold at the master's sale. (Ewell on Fixtures,—1876 ed.— p. 276.) In the late case of *Cross* v. *Weare Commission Co.* 153 Ill. 499, on page 514, it was said: "The machinery was especially adapted for use in connection with the real estate. It was put up for use and actually used with it, and was not severed from the realty in ownership." There it was held it passed to a mortgagee and was not subject to levy and sale upon an execution, as personal property. In *Arnold* v. *Crowder, supra,* a set of farm scales fastened to sills laid upon brick walls was held to be a part of the real estate, and in *McLaughlin* v. *Johnson,* 46 Ill. 163, as between vendor and vendee, it was held that rails hauled onto the premises with the intention of erecting a fence, but lying loose upon the land at the time of the sale, passed under a deed to the farm. Many other cases of similar import might be cited.

We are of the opinion that the trial court erred in holding that appellee had the right to remove the three

show-cases and two racks and the two hangers from the building purchased by appellant at the master's sale.

The decree of the circuit court will be reversed and the cause will be remanded to that court, with directions to enter a decree in accordance with the prayer of the bill.

*Reversed and remanded, with directions.*