CRANE ERECTORS AND RIGGERS, INC., Plaintiff-Appellee, *v.* LA SALLE NATIONAL BANK, Trustee, *et al.*, Defendants (The Great West Life Assurance Company, Defendant-Appellant).

Second District No. 2—83—0688

Opinion filed July 13, 1984.

Gregory R. Pool, Stuart I. Finkle, Elizabeth C. McGinnity, and Sandra Maki, all of Chicago Title Insurance Co., of Chicago, for appellant.

John W. Demling, of Demling & Eckhardt, of Glen Ellyn, for appellee.

PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Crane Erectors and Riggers, Inc. (Crane), filed suit to enforce its claim for lien for the value of services performed in assembling, erecting and installing an overhead crane in a warehouse. As material here, the suit named as defendants Lefco, Inc., Leffingwell Steel Company, The Great West Life Assurance Company (Great West) and the La Salle National Bank, as trustee (La Salle). La Salle is named as the owner of the property and Great West is named as its successor in title. The trial court entered summary judgment for Crane, awarding a mechanics' lien in the amount of $17,832.22. Great West appeals.

The facts are established by the pleadings, affidavits, answers to interrogatories and a deposition.

On October 26, 1981, Crane received a purchase order from Lefco accepting its proposal to provide:

"labor, tools and equipment to receive and unload from truck shipment and immediately install, mechanically and electrically, one (1), 25 ton capacity, cab operated 80'0" span, double girder, motor driven, top running P & H crane weighing approximately 100,300#.

\* \* \*

Also included is the installation of 240' of 3 conductor, enclosed figure-8-bar main line electrification system with bolted brackets.

\* \* \*

\*\*\* to furnish, fabricate, deliver and install 135# crane rails with accessories for the 240' long runway. Alignment for proper span and parallelism is included. Estimated shipping weight 25,665#."

The proposal was sent to Leffingwell Steel Company, but was accepted by Lefco, Inc., at the same address. The contract price was $32,107.

Lefco occupied a wholesale steel warehouse in which the crane was to be used to move rolls of steel. La Salle held title to the property under Trust No. 44679, for the beneficial interest of Leffingwell Steel Company. Great West, which subsequently purchased the property, concedes that Lefco entered the contract with Leffingwell's knowledge and consent.

Louis F. Bodee, the president of Crane, testified in his deposition taken May 31, 1983, "I very reasonably believe" that the crane was leased from a "leasing company." The parties agree that Crane did

not supply the crane. No lease, however, has been offered or introduced.

· Bodee described the work. Crane installed two rails overhead about 45 feet above the floor, approximately 80 feet apart and running the length of the building. The building is designed with "runway beams or girders," which are supported by building columns and which have been sized to support the crane runway rails. The rails are attached to the runway beams with a "J" fastener which permits adjustment of the rails laterally.

The crane "to some extent" is built on the runway. First the rails are shipped in and installed. They are in 39-foot sections and are spliced together to make a 240-foot length of rail. The crane is then unloaded in parts, as received. It goes up in components. The crane consists of a "cab on a trolley." The trolley is a lifting mechanism, on wheels, which runs back and forth on two girders. It has a hoist and some controls. Power conductors, similar to overhead wires which electrical street cars employ, are installed along the runway. The crane runs over the whole 240-foot length.

The crane is used to handle rolls of steel, to off-load them from rail cars or flat-bed trailers, and to place them into or remove them from storage.

Bodee testified that "[i]t would probably be impractical to move this crane." However, he also testified that removal could be accomplished without material damage to the building.

The affidavit from La Salle states that Great West contracted to purchase the property from Leffingwell March 9, 1981, and purchased by deed dated January 8, 1982.

Work was performed between January 4 and February 15, 1982. Upon completion, Crane billed Lefco for $32,832.22. Leffingwell Steel, not Lefco, paid $15,000. When $17,832.22 remained due, Crane filed its mechanics' lien claim June 10, 1982, within four months of completion of work. Crane bases its lien claim solely on the labor and materials expended to install the crane, not on the crane itself. It filed a complaint to foreclose the lien June 24, 1983, within two years of completion of work, against all the parties named in this suit.

Lefco and Leffingwell Steel defaulted, and judgment was entered against them March 22, 1983.

Crane moved for summary judgment supported by its complaint; Great West filed a cross-motion for summary judgment supported by a memorandum and affidavit. The trial court granted summary judgment for Crane.

Great West contends that (1) the leased machinery, fixtures and

apparatus constituting the operating crane are not permanent fixtures and that the work performed in installing the leased items is not lienable; (2) they, as subsequent purchasers without record notice of the mechanics' lien, are not bound; (3) genuine issues of material fact remain which preclude summary judgment. In addition to arguing that the labor and material involved is lienable and that it is established by the facts, Crane makes the alternative argument that it would, in any event, be entitled to an equitable application of the payments already made to that portion of the work found to be nonlienable.

I

The factors to be considered in determining whether equipment has become a fixture, and thus "lienable," so that the realty to which it has been affixed can be subjected to a mechanics' lien claim, are: (1) the nature of its attachment to the realty, (2) its adaptation to and necessity for the purposes for which the premises are devoted, and (3) whether it was intended that the item in question should be considered part of the realty. (*Fehr Construction Co. v. Postal System* (1919), 288 Ill. 634, 642; *B. Kreisman & Co. v. First Arlington National Bank* (1980), 91 Ill. App. 3d 847, 852.) Intention is the preeminent factor, the other considerations being primarily evidences of intent. (*Owings v. Estes* (1912), 256 Ill. 553, 556; *Kreisman & Co. v. First Arlington National Bank* (1980), 91 Ill. App. 3d 847, 852.) The fact that an item can be removed without material injury to the realty does not of itself destroy its lienability. (*Owings v. Estes* (1912), 256 Ill. 553, 555; *Wanzer v. Smorgas-Brickan Developers, Inc.* (1970), 130 Ill. App. 2d 378, 385-86.) That an item may be removed does not conclusively establish that it is a trade fixture where it is clear that there is an intention permanently to improve the property by its installation. (See *Dual Temp Installations, Inc. v. Chicago Title & Trust Co.* (1976), 41 Ill. App. 3d 415, 417-18.) Parties may, however, contract to evidence an intention that the title to chattels which become annexed to realty does not pass and that they retain their character as trade fixtures until paid for; this agreement is binding upon the parties to the agreement where no rights of third parties are unfairly affected. *Jones v. Jos. Greenspon's Son Pipe Corp.* (1943), 381 Ill. 615, 619-20.

Great West argues that the mere fact an item is leased requires that the item remain personalty and prevents a lien claim based on it. However, we have been furnished no authority to that effect. On the contrary, whether the parties intend an item to remain personalty or to become realty may be shown by the terms of a title-withholding agreement, such as a lease, a conditional sales contract,

or a lease-purchase agreement, but the fact of such an agreement, alone, does not determine intent as a matter of law. *Cf. Ayrshire Coal Co. v. Property Tax Appeal Board* (1974), 19 Ill. App. 3d 41, 46 (conditional sales agreement, covering heavy mining equipment, characterized by court as bookkeeping).

■ Even if the item is substantially annexed to the realty, the vendee or lessee cannot unilaterally overcome the contractual agreement that the item shall remain a trade fixture, and the court cannot transfer title from vendor to vendee, nor from lessor to lessee, on the strength of such a unilateral act. (*Jones v. Jos. Greenspon's Son Pipe Co.* (1943), 381 Ill. 615, 619-20.) Third parties with notice of a title-retention agreement can be bound by it. (*Jones v. Jos. Greenspon's Son Pipe Co.* (1943), 381 Ill. 615, 621-22 (tenant-vendee and vendor agreed oil casing remained personalty under a conditional sales contract and landlord had notice); *National Bank of the Republic v. Wells-Jackson Corp.* (1934), 358 Ill. 356, 364 (tenant-vendee and vendor agreed sprinkler system remained personalty and landlord had notice).) However, while Crane recognizes that, at some unspecified time, its chief officer, Bodee, knew that the crane was leased, there is no evidence before us that Crane had notice of any agreement that it was to remain a trade fixture after installation.

■ Great West argues that it was Crane's burden to produce the lease in support of its claim that it was not precluded from securing a mechanics' lien to the leased items. We disagree. A mechanics' lien claimant has the burden of proving every element necessary to establish the lien. (See, *e.g., Condee, Inc. v. Chrisman* (1976), 38 Ill. App. 3d 729, 730.) However, the burden shifts when the claimant proves that the labor and material are furnished to improve the premises (see Ill. Rev. Stat. 1983, ch. 82, par. 1), and the owner at the time of the work or its successor claims that, under an agreement within the knowledge of the owner, items upon which the work is done were intended to be trade fixtures and not lienable. "The burden of producing evidence, chiefly, if not entirely, within the control of an adverse party, rests upon such party if he would deny the existence of claimed facts." (*Belding v. Belding* (1934), 358 Ill. 216, 220; *Southwest Federal Savings & Loan Association v. Cosmopolitan National Bank* (1959), 23 Ill. App. 2d 174, 180-81; *Wohl v. Yelen* (1959), 22 Ill. App. 2d 455, 459.) The "true rule" has been noted: " '*** an article which is affixed to the land, even slightly, is to be considered as part of the land unless the circumstances are such as to show that the article was intended all along to continue a chattel, the onus *** lying on those who contend that it is a chattel.' " *Owings v. Estes* (1912), 256 Ill. 553, 555.

There is proof of substantial physical annexation to the real estate of the rails, the assembled crane, and the necessary power supply which are the subject of the claimed work. The crane exceeds 100,000 pounds in weight. The rails weigh 135 pounds per yard; 160 yards of rail were fastened to overhead runways which were part of the building and designed to support the load of the rails. The crane spans 80 feet and runs the 240-foot length of the warehouse. While it is possible that the equipment can be removed without material damage to the building, it is impractical to do so.

There are other facts which allow a reasonable inference that the parties intended the crane to be a fixture. First, Leffingwell Steel Company, which is shown to be the landlord of Lefco, made the $15,000 payments on account of the work to Crane. Where a landlord makes payments for an item installed by the tenants, a fair presumption arises that, as between the landlord and tenant, the parties intend a permanent fixture. (*Miller v. Reed* (1973), 13 Ill. App. 3d 1074, 1077; *Schmeling v. Rockford Amusement Co.* (1910), 154 Ill. App. 308, 314.) Second, it is conceded that the crane remained in place and in use through the transfer of the building from Leffingwell to Great West and from Great West to a subsequent purchaser. The fact that the crane remained in the building after the transfer of ownership supports a similar inference that the parties intend a permanent fixture. *Cf. Kenny v. T. L. Arzt Foundry Co.* (1941), 308 Ill. App. 251, 259, 262 (heavy machinery, including a large overhead crane, which remained in foundry building during transfer pursuant to bankruptcy proceedings, were held to be fixtures).

■ In reviewing the grant of a motion for summary judgment all well-pleaded uncontroverted allegations and inferences to be drawn from them are taken as true. (*Colwell Systems, Inc. v. Henson* (1983), 117 Ill. App. 3d 113, 118; *Bishop v. Sears Roebuck & Co.* (1969), 105 Ill. App. 2d 333, 335.) Crane's complaint establishes that it installed the crane, received $15,000 on account of its work, and that it is owed $17,838.22. The record establishes that Leffingwell Steel owned the beneficial interest in the realty and sold it to Great West. The work done and the degree of annexation are established. Great West's answer does not controvert any allegations. It neither admits nor denies but demands strict proof thereof. It admits ownership. It also concedes in its brief that Leffingwell consented to Crane's work. We therefore conclude that no genuine issue of material fact exists and that Crane was entitled to the summary judgment as a matter of law. See Ill. Rev. Stat. 1983, ch. 110, par. 2—1005.

## II

Great West has claimed that it was not bound by Crane's mechanics' lien claim because it is a subsequent purchaser which took without notice of the lien. We find this to be without merit. There is no dispute that Crane properly perfected its lien within the four-month period required under the statute to enforce its lien against subsequent purchasers and brought suit within the two-year period required. (Ill. Rev. Stat. 1983, ch. 82, pars. 7, 9.) Proof of actual notice is not relevant if the claimant has properly filed. *In re Application of Bickel* (1922), 301 Ill. 484, 491.

## III

In the view we have taken we do not reach Crane's alternative argument that even if the work done to install the crane is found not to be lienable, the doctrine of equitable application of payments applies, so that Crane may have the $15,000 already received allocated to nonlienable items and the additional amount due to lienable items. But see *Schmeling v. Rockford Amusement Co.* (1910), 154 Ill. App. 308, 312; *B. Kreisman & Co. v. First Arlington National Bank* (1980), 91 Ill. App. 3d 847, 854.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

LINDBERG and HOPF, JJ., concur.