NOTICE

Decision filed 05/08/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250694-U

NO. 5-25-0694

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| RICHARD HICKS and JANE HICKS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellants, | ) | Randolph County. |
| | ) | |
| v. | ) | No. 23-LM-36 |
| | ) | |
| ANNE M. RANDOLPH, | ) | Honorable |
| | ) | Jennifer M. Becker-Roscow, |
| Defendant-Appellee. | ) | Judge, presiding. |

JUSTICE VAUGHAN delivered the judgment of the court.
Justices Boie and Clarke concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The circuit court's denial of plaintiffs' complaint for replevin is affirmed where the decision was not against the manifest weight of the evidence.

¶ 2   Plaintiffs, Richard and Jane Hicks, appeal the circuit court's order denying their complaint for replevin contending that the circuit court ignored real property and agency principles. For the following reasons, we disagree.

¶ 3                    I. BACKGROUND

¶ 4   On September 12, 2023, Richard and Jane filed a complaint in replevin against defendant, Anne Randolph. The complaint contended that Anne wrongly retained a 1985 Porsche 911 Targa Carrera, and the vehicle was valued between $40,000 and $50,000. The complaint requested the

1

court issue an order providing Richard and Jane with possession of the vehicle, the value of the property not delivered, and damages for the detention.

¶ 5    On October 20, 2023, Anne entered her appearance and, acting *pro se*, filed an answer denying Richard and Jane's allegations. In support, Anne submitted correspondence stating that the vehicle was part of a real estate transaction that closed on January 9, 2023, and was one of many personal property items left behind by Richard and Jane, the prior owners of the real property. Anne contended that the realtor, Jeffrey Heil, sent Anne a text message that stated Richard and Jane were "done" and would not be coming back for the rest of their belongings. Anne also contended that Richard and Jane had their neighbor and prior employee, Eddy Kerkover Jr., retrieve some of the left behind personal items including a large aluminum horse trailer, a four-wheeler, and guns, and Anne released those items to Eddy. Anne stated that she had to rent a dumpster to discard the remaining items, and that Richard and Jane failed to disclose, as to the real property, that the fireplace and heating systems were nonfunctional. Included as additional attachments were photographs of the car and property when Anne was shown the property in August 2022, a 1995 registration for the vehicle listing Richard as the owner, and an appraisal of the vehicle by Mt. Vernon I-64 Auto Auction listing a value of "restorable $8500," noting deficiencies with the vehicle. Anne also attached a copy of the real property sales agreement for the acreage and home located on Mount Sumit Road in Chester, Illinois, for $305,000. While taxes and crops were addressed in the contract, no language regarding any personal property was included in the agreement. The sales agreement also revealed that Jeffrey Heil was acting as a dual agent for the transaction and stated that the contract contained "all of the terms and conditions agreed upon by the parties hereof and supersedes all oral agreements, regarding the subject matter of this Contract and may only be amended or altered in writing signed by all parties." Under a

2

classification of "Riders" and "Other," the contract stated that Anne was "purchasing this home and property as/is." Anne's offer was presented at 3:30 p.m. on December 4, 2022, and said offer was accepted by plaintiffs at 7:16 p.m. on December 6, 2022.

¶ 6    On November 1, 2023, Richard and Jane's counsel issued a notice of hearing setting the case for hearing on at 10:30 a.m. on January 19, 2024. On December 19, 2023, counsel entered his appearance on behalf of Anne and filed an answer denying the majority of the allegations. The case was later dismissed for want of prosecution and reinstated upon request of Richard and Jane's counsel. The case proceeded to trial on November 1, 2024.

¶ 7    The following evidence was presented at trial. Eddy Kerkover, a former employee of Richard and Jane and current employee of Anne, testified that he assisted Richard and Jane with moving some of their personal property both before and after the closing. He moved a horse trailer prior to the closing and received a list from Richard with items he was to retrieve after the closing. Those items consisted of mounted heads, tables, model airplanes, and a trunk of rag dolls. He received permission to remove those items from Anne's husband, Bryce Hill, and he removed the items by January 17, 2023. Eddy agreed that a Porsche was left on the property and that he knew Richard wanted to keep the vehicle. He further stated, however, that the car was not on Richard's list and it was not until April 2023 that Richard contacted him about retrieving the car. When Eddy spoke with Bryce, he was told that it was a "sticky situation," that he should not be involved, and that Eddy should tell Richard and Jane that they should contact Anne and Bryce personally. Eddy relayed that information to Richard.

¶ 8    Jonathan Barbour, a deputy for the Randolph County Sheriff's Department, testified that either Richard or Jane contacted him on April 10, 2023, about getting a vehicle off the property

3

they previously owned. The officer spoke with the new owners by telephone, and he advised Richard and Jane and the new owners to contact attorneys because it was not a criminal matter.

¶ 9    Anne testified that she purchased the property from Richard and Jane on January 9, 2023. The parties both used Jeffrey Heil as the realtor. Anne never spoke to Richard or Jane prior to the closing. She never spoke to Richard about anything either before, during, or after the sale but did speak with Jane in April 2023. She stated that Richard and Jane were already living in Mississippi prior to the closing. Anne testified that there was "an abundance of personal property" left on the property following the closing. She stated that neither Jeffrey, Richard, nor Jane showed up to the closing. The only people who appeared at the closing were a lawyer for Randolph County Abstract and an employee of the abstract office. Anne agreed that she did not tell anyone at the closing that the prior owners could not pick up their personal property.

¶ 10    Anne testified that after the closing, many items remained on the property including a boat with a trailer, a boat motor, a horse trailer, a bush hog, a box blade cutter, dog kennels, a church pew, numerous .50-caliber shells, fur coats, a refrigerator, a freezer, a gun cabinet, a vault in the basement under the stairs, and a car in the barn. She stated there were other smaller personal items too numerous to mention. She stated that the car was sitting in groundhog holes about six inches below the ground and the roof of the car was torn. Anne testified that in April 2023, Bryce told Eddy that he could not collect the car and should not be involved in the situation. In April 2023, Anne told Jane she could not have the car.

¶ 11    Anne began researching what to do with the vehicle in March 2023. She explained that she applied for a lost title because she believed a vehicle left in the State of Illinois for more than seven days was considered abandoned. She followed the process on the Illinois website to proceed with obtaining the title. She received an appraisal in May 2023 and the surety bond in July 2023. She

stated that Richard never provided her with a specific list of what he wanted to retrieve and agreed that she allowed Eddy to take some of Richard and Jane's personal property after the closing in January 2023. She believed she provided Eddy ample time to pick up everything he came to retrieve. The last time Eddy removed property was on January 17, 2023. Between January 17, 2023, and April 2023, no one contacted her requesting retrieval of the remaining personal property from the home she purchased. At no time did anyone advise Anne of what personal property items plaintiffs were abandoning or retrieving. The only items Anne knew that Richard and Jane wanted to retrieve were those on Eddy's list. The car was not on the list.

¶ 12    Anne identified a letter she sent plaintiffs' counsel on October 19, 2023, that was attached to her initial answer. She agreed that she had requested that the vehicle be titled in her name by that time. She further explained that she obtained the appraisal for the vehicle because it was a State of Illinois requirement to obtain title for an abandoned vehicle. Once Anne had all of the required items, she mailed them to the Illinois Secretary of State's office, and they eventually sent her the title which was dated October 23, 2023. As to the other remaining items, Anne testified that she rented a 30 cubic yard dumpster, which was the largest available, to dispose of the items. She stated the dumpster was "exceedingly full" when it was retrieved. She also testified that the only piece of personal property that she knew Richard and Jane wanted was based on a conversation with Jeffrey, the realtor, who told her they wanted the horse trailer.

¶ 13    Jeffrey Heil testified that he was the realtor for both parties during the sale. He stated that Richard and Jane's property was ultimately sold to Anne on January 9, 2023, with a standard real estate contract that sold the property "as is." He believed that Anne contacted him after the sale regarding Richard and Jane's personal property. Jeffrey knew Richard and Jane were "adamant that they wanted that car." He agreed that he might have told Anne that Richard and Jane were

5

done retrieving their personal property. He agreed there was nothing specific in writing about the personal property. Jeffrey testified that he thought he told Anne but had no specific recollection of the conversation. He did recall Richard and Jane telling him that they were not coming back for any more personal property. He said it was a common occurrence for people to leave personal property when they sold their homes. Jeffrey stated he was "pretty sure" he told Anne that Richard and Jane wanted the car but agreed that he did not provide Anne with a copy of Richard's email stating he was not interested in selling the car. Jeffrey testified that he did not advise Anne of the email either.

¶ 14    The trial resumed on December 11, 2024. Richard and Jane moved for a directed verdict, which was denied. Jane Hicks testified that she was married to Richard and resided on the property until January 2023. Jane stated that she never spoke to the buyers until after the sale. Everything was done through the real estate agent. She stated that Anne requested an earlier closing but that was denied, because they were not able to get everything out of the house in that time frame and they wanted to wait until the new year so it would be a new tax season. She agreed the closing was in January 2023. She did not have any conversations with Eddy about retrieving the vehicle. She stated that she and Richard did not want Eddy touching the car because it required a "roll-on roll-off" trailer and explained that if a tractor pulled the vehicle, it might pull the bumper off. She stated that their delay in retrieving the vehicle stemmed from them finding the proper trailer, weather, and their health. Jane only spoke with Anne once after the closing. Anne told Jane she could not get the car. Jane told Anne she could not keep the car, and they would sue her for the vehicle.

¶ 15    Jane also testified that she and Richard moved to Mississippi approximately six years earlier but had not completely removed all of their personal possessions at the time of the closing. Jane's mother purchased the Mississippi house three years prior to the closing, but Jane and

6

Richard were taking their time moving things and fixing things at the Illinois house. Jane agreed that the johnboat, boat trailer, gun cabinets, bank safe, trunk of quilts, tools, and the bush hog remained on the property and stated they were supposed to be retrieved by various people. She did not know that mink coats were left on the property and stated she did not know they had a church pew.

¶ 16    Jane was asked to read paragraph five of the contract, which stated, "This Contract contains all of the terms and conditions agreed upon by the parties hereof and supersedes all oral agreements, regarding the subject matter of this Contract and may only be amended or altered in writing signed by all parties." Plaintiffs' lawyer objected to the exhibit being used in that way, stating the contract was for the "sale of real estate" and was not dealing with personal property. The court overruled the objection stating that "a lot of times in a real estate contract you're also dealing with personal property" which could include listing certain items that go with the house. Jane agreed that there were no modifications or follow-up agreements pertaining to the property sale. She did not think the contract dealt with any personal property items.

¶ 17    Richard Hicks testified that he sold property in Randolph County in 2023. He wanted the closing set for March 2023 but agreed to the January closing because the realtor represented to him that he would be allowed to obtain his personal items after the closing. Richard testified that he gave Eddy all of the farm equipment and told him that if he did not want it to "scrap it." Richard testified that he sent Eddy the vehicle key in March 2023. Richard also stated he had health problems from January to March 2023 that kept him from retrieving the vehicle. He stated that he told Jeffrey twice in January and February 2023 that he was going to retrieve the car and explained why he could not get there immediately. Richard also disputed that he ever told the realtor that he was not going to return to pick up the rest of the personal property. Richard identified a copy of

7

the vehicle insurance and stated the vehicle was insured at the time of the closing. The insurance policy listed the coverage period from October 11, 2024, to April 11, 2025. Richard also identified a vehicle identification card that listed him as the owner of the car. Richard testified that the last time the vehicle had current license plates was in 1998 and stated there may have been a lapse in car insurance during the period from 1998 to the present. He agreed that numerous items of personal property were left after the closing, and he told Eddy to take those items to the end of the lane. He had no contact with Anne prior to the sale and never had any communication with Anne about the car or any of the other personal property left on the premises. Richard valued the vehicle between $40,000 and $50,000, based on top running condition and low mileage. He stated the engine compartment looked like a brand new car, the interior was good, and the vehicle just needed washing and a few things done. Following Richard's testimony, closing arguments were provided. The court allowed the parties 10 days to produce case law or any precedent that involved the sale of a house. Richard and Jane's counsel relied on section 15-201 of the Revised Uniform Unclaimed Property Act (765 ILCS 1026/15-201(15) (West 2024)), as to the three-year time frame allowed to reclaim the property. Anne's counsel relied on section 4-201(b) of the Illinois Vehicle Code (625 ILCS 5/4-201(b) (West 2024)), which classified a vehicle as abandoned after seven days.

¶ 18    On January 22, 2025, the circuit court issued an order that first addressed the requirements for a replevin action, citing section 18-107 of the Code of Civil Procedure (735 ILCS 5/18-107 (West 2024)). The order then addressed the evidence and noted that neither the realtor nor Richard advised Anne that Richand intended to keep the Porsche and the sales contract did not address any personal property. The order also noted that Eddy's list of Richard's personal property did not include the vehicle. The circuit noted the two statutes presented by the parties and found, after reviewing both statutes, that neither allowed the court to classify the vehicle as "abandoned."

8

¶ 19 The court's order next addressed whether Richard and Jane were still the rightful owners of the property as required by the replevin statute. It reviewed the sales contract, noting the lack of language regarding personal property and that the property was listed "as is." It further noted that no other contract, either oral or written, addressed personal property either. The order noted that Eddy was allowed to remove items of personal property but further noted that "this was done before or immediately after the closing" with Anne's permission and that Anne was never advised that Richard "wanted the Porsche returned to him after the closing." The court found that "once the real estate [was] transferred to the buyer on the closing date, the personal property left on the real estate [became] the property of the buyer unless there [was] an agreement set forth in the real estate contract or another written contract between the parties as to that piece of personal property." The order further explained that if such finding was not made, "then a seller could continually return to their former property to retrieve items without the consent of the buyer." The court denied the complaint for replevin and stated that Anne should retain possession of the vehicle.

¶ 20 On February 3, 2025, Richard and Jane's counsel filed a motion to reconsider. It stated the court "erred in both the facts and the applicable law regarding the interpretation or the applicable [*sic*] of the law and the Plaintiff's ask the court to reconsider its decision." A hearing on the motion was held on June 20, 2025. Anne's counsel argued that deficiencies related to the motion and the court granted Richard and Jane's counsel request to refile the motion.

¶ 21 On July 14, 2025, Richard and Jane filed an amended motion to reconsider. The motion contended that the circuit court erred by not ruling that Richard and Jane had a holdover tenancy to retrieve their personal property. It also contended that the court erred by concluding there were no agreements outside of the real estate contract that allowed Richard and Jane to re-enter the property and retrieve several items of personal property after the closing. The motion also alleged

9

that the circuit court ignored agency principles, noting that Richard's desire to collect his automobile was provided to the realtor which imputed the knowledge to the buyers. On July 24, 2025, Anne filed a response disputing Richard and Jane's claims. On August 12, 2025, the circuit court issued an order finding there was no holdover tenancy created because it was a sale, not a lease, of the property and knowledge of a dual agent could not be imputed to Anne. The court denied the motion to reconsider, and Richard and Jane timely appealed.

¶ 22                                    II. ANALYSIS

¶ 23    "Replevin is an action whereby the owner or person entitled to the possession of goods or chattels may recover those good or chattels from one *** who wrongfully detains such goods or chattels." *Jim's Furniture Mart, Inc. v. Harris*, 42 Ill. App. 3d 488, 489 (1976); 735 ILCS 5/19-101 (West 2024). Replevin is a statutory proceeding and "[t]o prevail, a plaintiff must recover on the strength of his or her own title or right to immediate possession." *Gunn v. Sobucki*, 216 Ill. 2d 602, 613 (2005). "The primary purpose of the replevin statute is to test the right of possession of personal property and place the successful party in possession of the property." *Carroll v. Curry*, 392 Ill. App. 3d 511, 514 (2009). At trial, plaintiff has the burden of establishing both a superior right of possession over the disputed property (*id.*) and that the defendant wrongfully detained the property. *First Illini Bank v. Wittek Industries, Inc.*, 261 Ill. App. 3d 969, 970 (1994). The trial court's findings concerning the ownership of property are reviewed under the manifest weight of the evidence standard. *Milhahn v. Sapp*, 338 Ill. App. 12, 18 (1949). A decision is against the manifest weight of the evidence where " 'the opposite conclusion is clearly apparent or the decision is unreasonable, arbitrary, or not based on the evidence.' " *In re Marriage of Miller*, 2024 IL App (3d) 230098, ¶ 50 (quoting *In re Marriage of Trapkus*, 2022 IL App (3d) 190631, ¶ 42).

¶ 24 On appeal, Richard and Jane contend that the circuit court erred in failing to return the Porsche to them. They contend the court erred by considering the car as part of the real estate contract, ignoring the oral agreement between the buyers and sellers that allowed the sellers to re-enter the real estate and collect their personal property, and by requiring sellers to have "a written list of items that needed to be returned" as such requirement was "completely arbitrary and contrary to real estate law." Richard and Jane further contend that notice to the real estate agent of Richard's desire to collect the car was notice to Anne, and that the court disregarded agency law. Anne disagrees with each of plaintiffs' arguments and requests affirmation of the circuit court's decision.

¶ 25                              A. Reliance on the Sales Contract

¶ 26 In Illinois, the sale of real property must be in writing and signed by the parties privy to sale. See 740 ILCS 80/2 (West 2024). While the underlying purpose of the requirement is to prevent fraud or injustice (see *Conness v. Conness*, 94 Ill. App. 2d 281, 284 (1968)), an underlying contract is equally purposeful in delineating exactly what is, or is not, included in the real property transfer. "Courts are charged with the responsibility to construe, interpret, and determine the legal effect of a contract." *Marsh v. Rheinecker*, 267 Ill. App. 3d 196, 199 (1994). It was undisputed that the parties entered into a land sales contract in which Anne purchased the residential property and surrounding land for $305,000. It was also undisputed that Anne's claim to the vehicle stemmed from Richard and Jane leaving the vehicle on the real property Anne purchased for over three months. As such, we cannot find error in the court considering the sales contract language when considering the replevin issue.

¶ 27 "Words derive their meaning from the context in which they are used, and the contract must be viewed as a whole 'by viewing each part in light of the others.' " *Board of Trade of City*

11

*of Chicago v. Dow Jones & Co.*, 98 Ill. 2d 109, 122-23 (1983) (quoting *La Throp v. Bell Federal Savings & Loan Ass'n*, 68 Ill. 2d 375, 381 (1977)). Here, no language in the contract specifically addressed personal property left behind following the closing. However, the contract language did state that "Buyer accepts the property and its improvements, if any, in its present condition, subject only to [blank line]." No additional language was included on the blank line. The contract also stated that Anne took the property "as is." It is well-established that

> "when a real estate contract contains an 'as is' provision, it means that the purchaser agrees to take the property in its existing condition with whatever faults it may possess and implies that the seller is relieved of any further obligation to reimburse for loss or damage because of the property's condition." *Kopley Group V., L.P. v. Sheridan Edgewater Properties, Ltd.*, 376 Ill. App. 3d 1006, 1016 (2007).

¶ 28    Based on the testimony provided at the hearing, it was undisputed that following the closing, the "present condition" of the real property included numerous personal property items left behind by Richard and Jane, including the vehicle. Nothing in the sales contract revealed an intent by Richard and Jane to retain ownership in any of the personal property or a desire to retrieve any of the personal property items at a later date. As such, we cannot hold that the circuit court's finding that the sales contract was not evidence of Jane and Richard's right to possess the vehicle was in error. Therefore, we cannot hold that the circuit court's finding is against the manifest weight of the evidence.

¶ 29                    B. The Alleged Oral Agreement

¶ 30    Richard and Jane also contend that the circuit court erred by ignoring "the parties' agreement which gave the Plaintiffs oral permission and authority to re-enter the real estate and collect and retrieve the Plaintiffs personal property." No citation to such agreement is provided in

12

the brief. Indeed, our review of the transcript from the two-day hearing fails to support Richard and Jane's contention. The testimony from Jane, Richard, and Anne unanimously agreed that there was no communication between those parties prior to the closing. We further note that, even if an oral agreement had been reached prior to the closing, the sales contract language "supersede[d] all oral agreements," unless the contract was "amended or altered in writing signed by all parties." As such, the sales contract would have subsumed any oral agreement, even if one had been shown between the parties. The evidence also revealed that neither Richard, Jane, nor the realtor attended the closing, and it was not until three months after the closing that communication between Jane, Richard, and Anne occurred. Such facts undermine any finding of an "oral agreement," and therefore, we cannot hold that the trial court's lack of reliance on an alleged "oral agreement" between the parties was against the manifest weight of the evidence.

¶ 31                                    C. Agency

¶ 32    Richard and Jane also contend that the court "completely disregarded agency law." They contend that Richard's notice to the real estate agent of Richard's desire to keep the vehicle was notice to Anne. However, it was undisputed that the real estate agent acted as a dual agent to both parties to the contract.

¶ 33    The Real Estate License Act of 2000 discusses dual agency. See 225 ILCS 454/15-45 (West 2024). Section 15-45(e) states that "[i]n the case of dual agency, each client and the licensee possess only actual knowledge and information. There shall be no imputation of knowledge or information among or between clients, brokers, or their affiliated licensees." *Id.* § 15-45(e). Therefore, while Richard told Jeffrey that he intended to keep the vehicle, and Jeffrey testified that he was well aware of Richard's intention, Jeffrey failed to state with any certainty that the same information was ever provided to Anne. Actual knowledge by Anne was not borne out by the

13

testimony and no imputation of knowledge is allowed with dual agency. *Id.* As such, the circuit court's decision not to impute knowledge to Anne via the dual agency was correct and therefore cannot be classified as against the manifest weight of the evidence.

¶ 34                                                    D. Replevin

¶ 35    Finally, Richard and Jane contend that the court erred in not providing them with possession of the vehicle. As noted above, an action in replevin requires plaintiffs to "recover on the strength of his or her own title or right to immediate possession." *Gunn*, 216 Ill. 2d at 613. In determining whether an item is personal property and not part of the real property, "three factors are considered: (1) the nature of its attachment to the realty; (2) its adaptation to and necessity for the purpose for which the premises are devoted; and (3) whether it was intended that the item in question should be considered part of the realty." *Harrisburg Community Unit School District No. 3 v. Steapleton*, 195 Ill. App. 3d 1020, 1024 (1990). "Intent is the preeminent factor, the other considerations being primarily evidences of intent." *Id.* (citing *Owlings v. Estes*, 256 Ill. 553, 556 (1912))

¶ 36    Here, there is no indication that the Porsche was attached to the real property beyond the fact that it was sunk six inches into the ground due to groundhog burrows. Nor is there any indication that it was a necessary purpose for which the premises were devoted, as the evidence revealed that the property was used for farming, not to service or show motor vehicles. Therefore, we are left to the third factor of whether Jane and Richard intended to include the item as part of the real property sale. *Id.*

¶ 37    There is no dispute that the vehicle was left in a barn located on a piece of property that was sold "as is" on January 9, 2023. The vehicle was one of numerous items, including a johnboat, a trailer, a picnic table, mink stoles, and a bank safe, left behind following the sale. While a few

14

items were retrieved by Eddy at the request of Richard, Eddy's list did not include the vehicle, and Eddy's compilation of the items contained on the list was completed within eight days of the closing. There was evidence that Richard told Jeffrey that he did not intend to sell the vehicle when Richard was told that there were people who were not interested in the real property but were interested in purchasing the car; however, the evidence fails to support a finding that Jeffrey ever told Anne or Bryce of Richard's intent to retain the vehicle. Instead, the evidence confirmed that Jeffrey later told Anne that Jane and Richard were "done" retrieving their personal property. The evidence also revealed that the vehicle remained in the barn for over three months following the closing on the sale of real property before Richard or Jane ever spoke to Anne or Bryce about their desire to retain the vehicle.

¶ 38     Richard's claim for possession of the vehicle was based solely on a 2024 insurance policy and a vehicle identification card dated August 24, 1995. Richard's testimony confirmed that insurance may have lapsed between 1995 and 2024. Additionally, photographs of the vehicle revealed that the license plates on the vehicle expired in May 1998.

¶ 39     Jane and Richard's evidence was countered with a State of Illinois certificate of title listing the owner of the vehicle as Anne. Anne's testimony revealed that she obtained certificate of title through the Illinois Secretary of State which required an appraisal and a surety bond. Our review of section 3-109 of the Illinois Vehicle Code reveals that a certificate of title will not be issued unless "the applicant presents documents reasonably sufficient to satisfy the Secretary of State as to the applicant's ownership of the vehicle ***." 625 ILCS 5/3-109(a) (West 2024). No certificate of title was ever presented listing Richard as the owner of the vehicle.

¶ 40     "One who has no right to possession of the property cannot maintain replevin even against a person who has no title to the property and is wrongfully in possession of it." *Gunn*, 216 Ill. 2d

15

at 613 (citing *Hanaman v. Davis*, 20 Ill. App. 2d 111, 115-16 (1959)). Here, the Secretary issued a certificate of title, not a provisional title (see 625 ILCS 5/3-109(b), (b-5) (West 2024)) to Anne. Nothing in the sales agreement indicated that Jane and Richard were not including the vehicle in the "as is" sale that clearly included other items of unretrieved personal property after January 17, 2023. As noted above, there were blank lines in the sales agreement on which Jane and Richard's intent to retain the vehicle could have been clearly stated. Further, there was no communication from Richard and Jane to Anne stating an intent to retrieve the vehicle either before or within a reasonable time after the closing. Based on this evidence, we cannot hold that the circuit court's denial of plaintiffs' replevin complaint was against the manifest weight of the evidence.

¶ 41                                    III. CONCLUSION

¶ 42    For the following reasons, we affirm the circuit court's judgment denying plaintiffs' complaint for replevin.


¶ 43    Affirmed.